**UNITED STATES of America, Appellee,**

v.

**Jerry Joe ARMIJO, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Scott David KISTNER, Appellant.**

**Nos. 87–5100, 87–5101.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 2, 1987.

Decided Nov. 25, 1987.

Rehearing and Rehearing En Banc
Denied in No. 87–5100
Dec. 29, 1987.

Rehearing and Rehearing En Banc
Denied in No. 87–5101
Dec. 30, 1987.

Rick E. Mattox, Eagan, Minn., for appellant Armijo.

Thomas J. O'Connor, Minneapolis, Minn., for appellant Kistner.

Henry J. Shea, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Jerry Joe Armijo and Scott David Kistner challenge their convictions for bringing illegal drugs into the Sandstone Federal Correctional Institution. Following trial by jury, appellants were convicted in district court[1] of one count of aiding and abetting the attempt to distribute approximately 17.2 grams of methamphetamine, approximately 10 grams of marijuana, and approximately 52 tablets of valium in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and one count of conspiracy to attempt to distribute those substances in violation of 21 U.S.C. § 846. Armijo was sentenced to four years of imprisonment and a five-year special parole term pursuant to 21 U.S.C. § 841. Kistner was sentenced to six years imprisonment and a five-year special parole term. Both defendants' sentences were to run consecutively to any sentences of imprisonment they were currently serving.

Debra Briggs, a person said to be appellant Kistner's girlfriend, received a package at her home. Her mother, suspecting it contained illegal drugs, opened the package and called Lieutenant Jerry Brown, the head of internal security at Sandstone. Brown in turn contacted the Federal Bureau of Investigation, which sent an agent to speak with Debra and her mother. De-

---

1. The Honorable Donald D. Alsop, United States District Judge, District of Minnesota, presiding.

bra told the agent that she had taken drugs into Sandstone on two prior occasions at Kistner's request. The agent determined by a field test that the contents of the package were amphetamines and marijuana. Debra agreed to cooperate with the FBI in making a controlled delivery of the drugs into the prison. The agent prepared a package with a small amount of the substance for Debra's use in making the delivery.

Debra then visited Kistner in prison. Upon leaving, she placed the package in a location she had used in the past, an intersection on prison property outside the prison walls. She dug a hole at the base of a stop sign, placed the brown paper bag containing the drugs in the hole, and covered it with snow as she had done on a previous delivery. She left only about one-half inch of the package exposed so that it would not be easily noticed, and then left the prison. Later that day Kistner called her and she told him where she had placed the drugs. Kistner in turn informed other inmates said to be involved in the scheme.

Lieutenant Brown observed the intersection until 6:00 p.m. when he removed the bag. He replaced it the next day early in the morning and covered it with snow. At about 9:20 that morning, Brown observed Armijo driving a machine equipped with a front end loader directly toward the intersection. Armijo stopped, walked to the stop sign, picked up the bag, placed it in his coat pocket, walked back to the loader and reentered it. When the loader started to move, Brown radioed the Sandstone landscape foreman to stop the vehicle. The foreman stopped the loader and searched it. He found the bag tucked up under the dashboard in the wiring.

Following close of evidence and soon after jury deliberations commenced, one of the jurors was involved in a car accident on her way to the courthouse. She suffered two cracked ribs and multiple bruises and contusions. According to her doctor, she would have been unable to resume jury service until the following week at the earliest. Armijo and Kistner moved for a mistrial based on the juror's absence, but the court denied their motions. The trial judge determined that the juror should be excused for just cause and that pursuant to Fed.R.Crim.P. 23(b) a verdict could be returned by the remaining eleven jurors.

Armijo claims that the trial judge's failure to sequester the jury, when coupled with the excuse for cause of one of the jurors after deliberations had begun, violated his right to due process. Kistner makes the more modest assertion that the trial judge abused his discretion in refusing to grant a mistrial instead of allowing the remaining eleven jurors to render a verdict.

■ Fed.R.Crim.P. 23(b) provides: "Even absent ... stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors." The constitutionality of a jury consisting of fewer than twelve members was established in *Williams v. Florida,* 399 U.S. 78, 103, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), and it follows that the Rule's provision for an eleven-person jury when one juror has been excused for cause is constitutionally permissible. *United States v. Smith,* 789 F.2d 196, 205 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); *United States v. Stratton,* 779 F.2d 820, 831 (2d Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986). With regard to the lack of sequestration, Armijo points to no specific source of a right to have the jury sequestered in order to avoid an eleven-member jury, and we are not persuaded that Armijo's contention that his right to due process was violated has merit.

Kistner's claim that the trial court abused its discretion in permitting an eleven-juror verdict is closer to the mark. The Advisory Committee Notes on the 1983 amendment to Rule 23(b) providing for an eleven-person jury seem to indicate that the amendment was designed to avoid mistrials after lengthy trials:

The amendment provides that if a juror is excused after the jury has retired to consider its verdict, it is within the discretion of the court whether to declare

a mistrial or to permit deliberations to continue with 11 jurors. If the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken. On the other hand, if the trial has been protracted the court is much more likely to opt for continuing with the remaining 11 jurors.

■ Appellants contend that the five-day trial in their case was not the type of protracted trial contemplated by the drafters of Rule 23(b). Although we have some reservation about the Rule's application in this case, we do not conclude that the district judge's refusal to declare a mistrial was clearly erroneous. We are in accord with the statement of the Advisory Committee that allowing a jury to proceed to verdict with fewer than twelve members absent a stipulation by the parties constitutes an "unusual step," one which should not be taken lightly. Nevertheless, the rule provides no limitation in terms of a trial's length, and the Notes themselves give no definitive guidance. Instead, the matter is left to the discretion of the trial court. In this case, the trial lasted for several days before one of the jurors was excused for cause, and produced approximately 800 pages of testimony and argument. The excused juror would not have been able to resume jury service until the following week at the earliest. The trial judge declined to delay the trial until the juror could return as that, in his view, would have been unfair to the jurors and the defendants. *See Stratton*, 779 F.2d at 832 (four and one-half day delay would risk dulling jury's recollections of evidence and arguments and would pose danger that jurors would discuss case with outsiders). In these circumstances, although we find it a very close case, we cannot say the trial court clearly erred.

Armijo claims error in the government's questioning him at trial regarding his prior drug use. When asked whether he had ever used drugs during his life, he was required by the court to answer over his attorney's objection. He responded that he had used illegal drugs, but denied any drug use while at Sandstone.

Fed.R.Evid. 404(b) bars evidence of prior acts introduced solely for the purpose of showing "action in conformity therewith," but allows such evidence for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Prior acts evidence is admissible if "(1) the evidence is relevant to an issue other than the defendant's character, (2) there is clear and convincing evidence that the defendant committed the other acts, and (3) the potential unfair prejudice does not outweigh its probative value." *United States v. DeLuna*, 763 F.2d 897, 912–13 (8th Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985).

The trial court stated that the government's inquiry into Armijo's former drug use was justified by its attempt to establish a motive for Armijo's alleged participation in the conspiracy. The government contends that, in light of Armijo's contention at trial that he had no knowledge of the contents of the paper bag he retrieved from the snow, Armijo's prior drug use was of some relevance in establishing his motive, intent, and lack of mistake or accident. Fed.R.Evid. 404(b). We would agree with Armijo that his drug use of several years past was not highly probative of his knowledge of the contents of the paper bag. However, as the trial judge noted, the use of drugs relates to the need to obtain them, and that could establish a motive for importing them into the prison.

■ However, we observe that even were we to find error in the admission of the evidence, reversal would not be warranted. Armijo's contention at trial that he thought the bag was merely litter was entirely incredible. Lieutenant Brown testified at trial that one had to come within a foot of the bag to be able to see it. The evidence showed that Armijo had stopped the front end loader near the bag, which was barely visible in the snow, and that he carried the bag in his coat pocket back to the loader where it was found by the au-

thorities tucked up under the dashboard in the wiring. Given the incongruity of these facts with Armijo's proffered explanation, we cannot conclude that the evidence of prior drug use could have substantially affected Armijo's right to a fair trial.

Both appellants moved to dismiss the indictment for the reason that they were assertedly indicted for the wrong offenses, aiding and abetting attempted distribution of and conspiracy to distribute controlled substances. They urge that they should have been charged under the more specific provisions of 18 U.S.C. § 1791 making it illegal for a person to provide inmates of a federal penitentiary with controlled substances, and which carries a lesser penalty than the charges for which appellants were indicted.

When an act violates more than one criminal statute, the government may prosecute under either, and the decision is generally a matter of prosecutorial discretion. *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979). This rule is not changed by the circumstance that one of the applicable statutes is general and the other specific. *See United States v. Boggs*, 739 F.2d 1376, 1378 n. 2 (8th Cir.1984). Appellants inappositely rely upon *Busic v. United States*, 446 U.S. 398, 404, 100 S.Ct. 1747, 64 L.Ed.2d 331 (1980), in which the Court held that a general sentence enhancement statute should not be applied to a criminal statute containing its own sentence enhancement provision. That holding simply concerns the sentencing phase of the trial and does not extend to the question of a prosecutor's exercise of discretion in charging a violation of the less specific of two statutes. *United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir. 1983); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1186–88 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Thus, appellants' argument is without merit.

Appellants raise additional challenges to the sufficiency of the evidence and the treatment of certain items of evidence. We have fully examined the record and con-

clude that these arguments are without merit. Accordingly, we affirm the convictions of both appellants.