**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James T. TABACCA,
Defendant–Appellant.**

**No. 88–5434.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1990.

Decided Jan. 29, 1991.

---

Peter M. Horstman, Federal Public Defender, Kerry Bensinger, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Robert L. Brosio, U.S. Atty., Robin R. Scroggie, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before REINHARDT and LEAVY, Circuit Judges, and KING, Senior District Court Judge.[*]

SAMUEL P. KING, District Judge:

Tabacca was convicted for interfering with a flight attendant under 49 U.S.C.App. § 1472(j).

·Tabacca asserts the District Court erred both in denying his Motions for Judgment of Acquittal and in refusing to give a requested jury instruction. Tabacca also argues that 49 U.S.C.App. § 1472(j) is unconstitutionally vague. Finally, Tabacca asserts the District Court abused its discretion by dismissing an absent juror after the commencement of deliberations.

The decisions of the District Court as to the Motions for Judgment of Acquittal and the requested jury instruction are AFFIRMED. This panel does not find 49 U.S.C.App. § 1472(j) to be unconstitutionally vague. Finally, the dismissal of the absent juror after deliberations had begun was an abuse of discretion; therefore this case is REMANDED for a new trial.

### Statement of Facts

On December 30, 1987, Tabacca was a passenger on a flight from Boston to Los Angeles. Tabacca is a smoker and was assigned to a seat where smoking initially was to be permitted. Subsequently, however, because of the cancellation of another flight, there was an unusually large demand for non-smoking seats on Tabacca's flight. Due to federal regulations which require commercial airlines to provide a non-smoking area for all passengers who request such seating, the entire airplane, except the first class section, was designated as non-smoking.

A ticket agent boarded the plane approximately 10 minutes before take-off to notify the passengers of this change. The announcement was repeated again by flight service manager Pamela Martinez during taxiing and after the plane had taken off. Apparently, many of the smoking passengers were quite upset by the change.

Tabacca was seated next to Robert Golian. Flight Attendant Evelyn Paz was working in Tabacca's section of the airplane. Paz saw the two men smoking and asked them to extinguish their cigarettes. Tabacca remained silent, but Golian told

[*] The Honorable Samuel P. King, United States District Court Judge for the District of Hawaii, sitting by designation.

Paz he intended to continue smoking since he had paid for a smoking seat. Neither of the two men put out their cigarettes. Paz informed them that if they refused to cooperate she would get the Captain, to which Golian replied, "Go ahead. Get the Captain." Paz then went to the cockpit and informed the Captain of the problem. The Captain did not leave the cockpit at that time, but Martinez, the flight service manager,[1] agreed to speak with Tabacca and Golian.

According to Martinez, the following then transpired.

Martinez approached Tabacca and Golian with her flight service manual. After she introduced herself, Tabacca responded, "This is fucking bullshit. I've had my ticket for three months and TWA isn't going to fucking tell me when I can smoke. I'm going to fucking smoke if I want to." Martinez then knelt down next to Tabacca and tried to explain the federal regulations, but Tabacca continued to assert that he intended to smoke. Martinez then stood up, using Tabacca's armrest to raise herself. As Martinez took her first step, Tabacca grabbed her by the arm and jerked and twisted her arm, causing her to strike the bulkhead of the seat across the aisle.[2] Martinez then went straight to the cockpit, told the Captain what had just occurred, and asked him to speak to Tabacca. The Captain then left the cockpit and spoke with Tabacca.

This was the only interaction between Tabacca and Martinez during the flight.

For the rest of the flight, Martinez dealt with other passengers in the coach section who were also upset by the no-smoking policy. She also served and removed dinner trays, and served coffee. However, she was so upset by the confrontation with Tabacca that she had to go to the lower galley of the aircraft several times to be alone and regain her composure.

When the flight reached Los Angeles, police were waiting. The flight attendants identified eleven passengers who had disobeyed the no-smoking requirement, which included Tabacca, Golian, and nine other passengers. Although four people were arrested, only Tabacca was prosecuted.

The following day, Martinez was examined by Dr. Leon Artzner. Dr. Artzner testified that Martinez complained of soreness across the right forearm and around the right wrist, had a thin abrasion 15 centimeters long on her right forearm, and tenderness and mild muscle spasms in her lower back. Martinez was given medication and put on medical leave.

## DISCUSSION

### I. *District Court's Denial of Tabacca's Motion For Judgment of Acquittal*

Tabacca argues that the District Court erred for two reasons in denying his motions for Judgment of Acquittal pursuant to Fed.R.Crim.P. 29(a). First, he asserts that a violation of 49 U.S.C.App. § 1472(j)[3] requires that the safety of the aircraft be

---

1. The government's brief sets out Ms. Martinez' duties as flight service manager:

 ... As Flight Service Manager, Ms. Martinez was in charge of supervising all other flight attendants, of which there were eight, on the airplane.

 As Flight Service Manager, Ms. Martinez had the responsibility of briefing the flight attendants of current safety and other regulations prior to the flight, and of designating all working positions on the flight. Ms. Martinez was directly below the cockpit crew in the chain of command. The cockpit crew was comprised of the Captain, the First Officer and the Flight Engineer. In the event of an evacuation, crisis or emergency, Ms. Martinez would have been in charge of ensuring that all safety procedures were followed. Appellee's Brief, p. 4.

2. Four passengers who were seated near appellant on flight #853 testified that they did not hear appellant use profanity, nor did they see him shove or act violently toward Martinez. Flight attendant Paz testified, however, that she saw appellant shove Martinez.

3. 49 U.S.C.App. § 1472(j) states:

 Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, assaults, intimidates, or threatens any flight crew member or flight attendant (including any steward or stewardess) of such aircraft, so as to interfere with the performance by such member or attendant of his duties or lessen the ability of such member or attendant to perform his duties, shall be fined not more than $10,000 or imprisoned not more than twenty years, or both. Whoever in

endangered, and that there was insufficient evidence in this case to make such a find-ing. Second, Tabacca argues that even if endangering the safety of the aircraft is not required, there was insufficient evidence for the jury to find that Tabacca had "intimidated" Pamela Martinez.

### A. *Standard of Review*

On appeal, in ruling on a motion for judgment of acquittal, the appellate court should determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find appellant guilty beyond a reasonable doubt. *United States v. Hazeem*, 679 F.2d 770, 772 (9th Cir.), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982).

■ The requirements for a violation under 49 U.S.C.App. § 1472(j) is a question of statutory interpretation, and is therefore subject to *de novo* review by this court. *United States v. Fredman*, 833 F.2d 837, 838 (9th Cir.1987); *United States v. Mehrmanesh*, 689 F.2d 822, 827 (9th Cir. 1982).

■ When reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the government and draw all reasonable inferences favorable to the government. The conviction will be upheld if any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Merrill*, 746 F.2d 458, 461 (9th Cir.1984), *cert. denied*, 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985).

### B. *Interpretation of 49 U.S.C.App. § 1472(j); Sufficiency of the Evidence as to the Endangerment of the Aircraft*

1) *Legislative History of § 1472(j)*

In support of his position that he must have endangered the safety of the aircraft

to have violated § 1472(j), Tabacca points to remarks made by the provision's spon-sor, Senator Engle.

When the Senate bill introducing § 1472(j) was first drafted, it applied only to interference with the cockpit crew, and not with the flight attendants. A subsequent House amendment made it applicable to flight attendants as well. 107 Cong.Rec. 17170 (August 28, 1961). In the debate on the Senate floor concerning acceptance of the House amendment, Senator Engle made the following statements:

> I believe we were right in the first in-stance in not applying to stewardesses the provision which applied to flight crew members who were actually employed in duties directly involving the safety of the aircraft. But the crime having to do with interference with stewardesses may be prosecuted, either under section 1 or the other section. We assume that, if it was a minor crime, like that of a drunk quarreling with a stewardess over whether or not he could keep his bottle, he would not be charged under the major punishment portion of the bill, but under the minor provision, which would not carry the heavy penalty.

*Id.* The House amendment was subsequently accepted by the Senate and became part of the statute as passed.

Relying on Senator Engle's statement, Tabacca argues that minor crimes directed at flight attendants should be punished pursuant to less severe provisions than § 1472(j), such as § 1472(k).[4]

■ However, Tabacca's use of Senator Engle's remarks to support his construc-tion of the statute is not persuasive.—"If [statutory] language is unambiguous, and if Congress has not clearly expressed a contrary intent, we will regard that lan-

---

the commission of any such act uses a deadly or dangerous weapon shall be imprisoned for any term of years or for life.

**4.** 49 U.S.C.App. § 1472(k)(1) reads:
 Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, commits an act which, if committed

within the special maritime and territorial jurisdiction of the United States, as defined in section 7 of Title 18, would be in violation of section 113, 114, 661, 662, 1111, 1112, 1113, 2031, 2032, chapter 109A, or 2111 of such Title 18 shall be punished as provided therein.

guage as conclusive." *United States v. Schwartz*, 785 F.2d 673, 679 (9th Cir.), *cert. denied*, 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986) (*citing Russello v. United States*, 464 U.S. 16, 17, 104 S.Ct. 296, 297, 78 L.Ed.2d 17 (1983)). The remarks of a legislator, even those of the sponsoring legislator, will not override the plain meaning of a statute.[5] See *Weinberger v. Rossi*, 456 U.S. 25, 35 n. 15, 102 S.Ct. 1510, 1517 n. 15, 71 L.Ed.2d 715 (1982) ("The contemporaneous remarks of a sponsor of legislation are not controlling in analyzing legislative history.")

■ This panel finds 49 U.S.C.App. § 1472(j) to be clear on its face; therefore the plain language of the provision controls. Looking to that language, there is no indication that the safety of the aircraft need be endangered. Rather, an act of assault, intimidation, or threat must merely interfere with the performance of the flight attendant's duties.

### 2) *Sufficiency of the Evidence*

Since we find that § 1472(j) does not require that the aircraft be endangered for a violation to occur, it is unnecessary to reach the issue of whether sufficient evidence was presented at trial to prove that element of the offense.

### C. *Sufficiency of the Evidence as to "Intimidation"*

Tabacca argues that there was not enough evidence for a reasonable jury to find that he had "intimidated" Martinez.

■ Under § 1472(j), "proof that the victim was in fact frightened for his own physical safety [is not] required in order to find that a defendant performed the criminal act of intimidation. It is sufficient that the conduct and words of the accused would place an ordinary, reasonable person in fear." *United States v. Meeker*, 527 F.2d 12, 15 (9th Cir.1975). In determining whether there is sufficient evidence of intimidation, this court must look to the "totality of the circumstances" and view the evidence in the light most favorable to the government. *Id.* at 16.

Tabacca was charged with assaulting, threatening, and intimidating Martinez, but the jury found him guilty of intimidation only. Tabacca therefore argues that since the jury rejected the assault charge, that necessarily means they rejected the government's assertions that Tabacca had grabbed or pushed Martinez. Thus, the only remaining evidence on which a finding of intimidation could be based is the conversation between Tabacca and Martinez, which Tabacca argues is insufficient.

The jury could easily have dismissed the assault charge without rejecting the evidence that a physical battery occurred. The jury instruction on assault read:

> Any *willful* attempt or threat *to inflict injury* upon the person of another, when coupled with an apparent present ability so to do, and any *intentional* display of force such as would give the victim reason to fear or expect immediate bodily harm, constitutes an assault. An assault may be committed without actual touching, or striking, or doing bodily harm, to the person of another. (emphasis added).

It is feasible that the jury could have concluded that although Tabacca grabbed and shoved Martinez, he lacked the requisite intent necessary to find assault.[6]

---

**5.** Indeed, even if we were to consult Senator Engle's comments, we would not construe the statute as appellant suggests. Senator Engle was speaking in opposition to the amendment that included assault of a steward or stewardess within the crime defined by section 1472(j). Thus, he was attempting to narrow the provision's scope. By passing the statute as amended, Congress may well have intended to reject Senator Engle's view.

**6.** This result seems reasonable especially given the jury's first note to the court, which asked:

> Could the defendant be found guilty if he committed the act but did not intentionally mean any harm to M. personally? Is a person not responsible for his acts whether intentional or not?

The court responded:

> With respect to the second element of the offense, the government must prove that the defendant knowingly and intentionally performed an act of assault, threat or intimidation. The government need not prove, however, that the defendant intended to harm Martinez personally.

Based on the above, the District Court made no error in denying Tabacca's two Motions for Judgment of Acquittal. A finding that Tabacca endangered the safety of the aircraft is not necessary for a conviction under § 1472(j). Further, there was sufficient evidence for a reasonable jury to find that Tabacca had "intimidated" Martinez.

## II. *District Court's Refusal To Give Tabacca's Proposed Jury Instruction*

Tabacca argues that the District Court erred when it refused to give his proposed jury instruction requiring that for a conviction under § 1472(j), the jury had to find that he endangered the safety of the aircraft.[7]

### A. *Standard of Review*

■ The question of whether a district court properly instructed a jury on the elements of a statutory crime is reviewed de novo. *United States v. Spillone*, 879 F.2d 514, 525 (9th Cir.1989), *cert. denied*, — U.S. —, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

### B. *No Error*

■ A proposed instruction regarding the appellant's theory of the case should be given if there is a foundation for it in the evidence and it is supported by the law. *United States v. Escobar de Bright*, 742 F.2d 1196, 1198 (9th Cir.1984); *United States v. Winn*, 577 F.2d 86, 90 (9th Cir. 1978).

Since, as discussed above, a conviction under § 1472(j) does not require proof that Tabacca endangered the safety of the aircraft, there is no support in the law for Tabacca's proposed jury instruction. The District Court's refusal to give the instruction was therefore proper.

7. The proposed instruction read:
 If you unanimously agree that during the flight Mr. TABACCA committed an act which constituted intimidation, assault or threat to Ms. Martinez, then you must decide whether that act constituted "interference" within the

## III. *Vagueness Issue*

Tabacca argues that 49 U.S.C.App. § 1472(j) is unconstitutionally vague. This is more so the case, he argues, if this court finds that a conviction may be obtained under the statute without proof that the safety of the aircraft was endangered.

### A. *Standard of Review*

■ Tabacca did not raise this issue before the District Court. He may, however, attack the constitutionality of the law under which he is charged for the first time on appeal. *United States v. Gilbert*, 813 F.2d 1523, 1528–29 (9th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987).

### B. *Discussion*

[10, 11] When determining an issue of vagueness, this court must consider the common understanding of the terms of the statute in question. *United States v. Fitzgerald*, 882 F.2d 397, 398 (9th Cir.1989). "Further, because this action does not involve first amendment rights, this court need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute, the conduct in question is prohibited." *Id.; United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989); *United States v. Hogue*, 752 F.2d 1503 (9th Cir.1985). It is not necessary to address whether the statute is vague as to its other potential applications. *Hogue*, 752 F.2d at 1504.

■ A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence of what conduct is prohibited, or if it invites arbitrary and discriminatory enforcement. *Doremus*, 888 F.2d at 634.

Tabacca argues that both of these evils are present under § 1472(j). First, Tabacca argues that terms such as "intimidate",

meaning of the instructions that I have read to you. The government must prove to you beyond a reasonable doubt that the act committed by Mr. TABACCA upon Ms. Martinez resulted in interference sufficient to endanger the safety of the aircraft during flight.

"threaten", "interfere", and "lessen the ability" are so vague that they do not provide any standard by which to determine the kind of conduct prohibited.

We conclude that 49 U.S.C.App. § 1472(j) does not criminalize general acts of "threats" or "intimidation." Rather, the provision clearly includes modifying language which provides parameters of conduct. The proscribed acts must occur while aboard an aircraft and must "interfere with the performance by ... [an] attendant of his duties or lessen the ability of such ... [an] attendant to perform his duties". 49 U.S.C. § 1472(j). " 'Words inevitably contain germs of uncertainty.' Imprecision in penal legislation should be tolerated if the language can be said nevertheless to give fair notice to those who might violate it." *Gilbert*, 813 F.2d at 1530 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973)).

 Looking to the particular circumstances of this case, Tabacca's actions come within a reasonable construction of § 1472(j). A person of ordinary intelligence could foresee that grabbing and shoving a flight attendant, coupled with a diatribe of profrane remarks, are actions which could inhibit the performance of an attendant's duties.

 Tabacca argues secondly that § 1472(j) invites arbitrary and discriminatory enforcement by the flight crew members. He points out that when his flight landed in Los Angeles the flight attendants singled out passengers for arrest by the waiting police. His assertion, however, that they randomly selected those they did not like is unfounded. Rather, the flight attendants pointed out those whom they believed had been smoking on the flight in violation of the no-smoking regulation. Nor does the fact that Tabacca was the only one prosecuted necessarily support Tabacca's theory that § 1472(j) is arbitrarily enforced. It is possible that no other passenger battered and swore at a flight attendant as Martinez testified that Tabacca did.

Tabacca's challenge to § 1472(j) on grounds of vagueness is rejected.

## IV. The District Court's Decision To Excuse A Juror

The trial of this case began on August 30, 1988. The presentation of evidence took two and a half days. On Friday, September 2, 1988, after a day and a half of deliberation, the jurors sent a note to the court stating that they were deadlocked. After a short discussion with the jury regarding the situation, the court decided to excuse them for the three-day Labor Day weekend and have them start fresh the next week.

The jury returned for further deliberations on Tuesday, September 6, 1988. On that morning, however, juror number three, a Mr. Pope, was unable to attend. He informed the court that his wife had taken his car keys, and since he lived some distance away, that there was no other way for him to reach the courthouse.

After being informed of the situation, counsel for defense requested that the entire jury reconvene the next day, whereas counsel for the government requested that the jury proceed with the remaining eleven jurors. The court decided that pursuant to Rule 23(b) of the Federal Rules of Criminal Procedure, juror number three would be excused and the remaining eleven jurors would be directed to deliberate without him. Approximately two hours after reconvening, and after a third note regarding instructions was answered by the court, the jury returned the guilty verdict.

### A. Standard of Review

 A decision by the District Court to excuse a juror for just cause pursuant to Fed.R.Crim.P. 23(b) is reviewed by this court for abuse of discretion. *United States v. Wilson*, 894 F.2d 1245, 1250 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990); Fed.R. Crim.P. 23(b).

### B. Discussion

 Tabacca argues on appeal that the District Court abused its discretion when it

excused juror number three, Pope. He asserts that since the trial lasted only two and a half days, the evidence was neither so voluminous nor so complicated that one additional day's delay would cause the jurors' memories to fade. Tabacca also asserts that Pope's reason for not attending did not constitute "just cause". Finally, Tabacca argues that the dismissal of Pope significantly prejudiced him since, although the jury was deadlocked on Friday, it returned a guilty verdict within two hours of Pope's being excused.

Prior to 1983, proceeding with eleven jurors was possible only if there was a stipulation by the parties and approval by the court. In 1983, however, Rule 23(b) was amended to allow the court to excuse a juror and proceed with the remaining eleven jurors if there was "just cause" to do so. Rule 23(b) reads in pertinent part:

> Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors. Fed.R.Crim. Pro. 23(b).

The Advisory Committee Notes provide more insight into the proper use of Rule 23(b). The Committee explains:

> It is the judgment of the Committee that when a juror is lost during deliberations ... it is essential that there be available a course of action other than mistrial. Proceeding with the remaining 11 jurors, though heretofore impermissible under rule 23(b) absent stipulation by the parties and approval of the court, (citation omitted), is constitutionally permissible. Notes Of Advisory Committee On Rules.

The Committee pointed to the case of *United States v. Meinster*, 484 F.Supp. 442 (S.D.Fla.1980), *aff'd sub nom. United States v. Phillips*, 664 F.2d 971 (5th Cir. 1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), as a good example of why the amendment to Rule 23(b) was needed. There, after a four month trial involving twelve defendants charged under a 36–count indictment, a juror suffered a heart-attack and was excused at the beginning of deliberations. As the Committee states, "The problem is acute when the trial has been a lengthy one and consequently the remedy of mistrial would necessitate a second expenditure of substantial prosecution, defense, and court resources."

The Committee summed up its comments with the following:

> The amendment provides that if a juror is excused after the jury has retired to consider its verdict, it is within the discretion of the court whether to declare a mistrial or to permit deliberations to continue with 11 jurors. If the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken. On the other hand, if the trial has been protracted the court is much more likely to opt for continuing with the remaining 11 jurors.

The issue of what constitutes "just cause" to excuse a juror pursuant to Rule 23(b) has not yet been addressed by this court. Several other circuits, however, have considered the issue.

In *United States v. Stratton*, 779 F.2d 820 (2nd Cir.1985), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986), the Second Circuit found that a district court did not abuse its discretion when it excused a juror pursuant to Rule 23(b). The juror, having previously notified the court of her conflict, insisted on leaving after one and a half days of deliberations in order to observe a religious holiday. Defense counsel had been warned of this possibility before deliberations began and refused to consent to the substitution of an alternate juror. *Id.* at 830. Had the court not allowed the jury to deliberate without the absent juror, the jury's deliberations would have been postponed for four and one half days. Thus, the court decided to excuse her, and the remaining eleven jurors returned guilty verdicts that same day. The opinion does not reveal the length of the trial, but the case involved

four defendants charged with narcotics violations.

In *United States v. Wilson,* 894 F.2d 1245 (11th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990), a trial court's decision to excuse an ill juror was upheld by the Eleventh Circuit. There, the juror became ill on the sixth day of deliberations, prompting an early dismissal of the jury for the weekend. The juror then told a court clerk over the weekend that she couldn't make it for Monday but hoped that she'd be better by Tuesday. On Monday, being unable to determine with any certainty when the juror would regain her health, the court decided to excuse the juror and proceed with the remaining eleven jurors. The trial in this matter had lasted nine weeks.

In *United States v. Armijo,* 834 F.2d 132 (8th Cir.1987), *cert. denied,* 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988), a district court was again upheld in its decision to excuse a juror. There, the juror was involved in a car accident soon after deliberations had commenced and would not have been able to return until the following week at the earliest. The trial of the case had taken five days.

Although *Stratton, Wilson,* and *Armijo* all upheld the decisions by the district courts to excuse a juror, the situation presented by the instant case provides significantly less reason for finding "just cause."[8] The trial lasted only two and a half days, with the government calling only three witnesses. Clearly this was not the type of lengthy trial which the Advisory Committee envisioned when adopting the amended Rule 23(b). More importantly, the absent juror was certain to be available the next day. The only reason he was out was because his wife had his car keys. This is unlike the situation in *Wilson* and

*Armijo* where the length of the juror's absence could not be determined in advance. Moreover, waiting one day is much less burdensome than the four and one half days involved in *Stratton.* Further, a short two and a half day trial, combined with one additional day's delay, is unlikely to induce dulled memories on the part of the jurors, even if they had taken a three-day weekend. *See Stratton,* 779 F.2d at 832 ("Adjournment [for four and one half days] would have risked dulling the jurors' recollections of the evidence and summations....").

## CONCLUSION

The District Court's denial of Tabacca's Motions for Judgment of Acquittal is AFFIRMED.

The District Court's refusal to give Tabacca's proposed jury instruction is AFFIRMED.

49 U.S.C.App. § 1472(j) is not unconstitutionally vague.

Tabacca's conviction is REVERSED on the grounds that the District Court abused its discretion when it excused juror number three; this matter is REMANDED for new trial.

---

**8.** The District Court stated its reasons for finding "just cause" to excuse Mr. Pope as follows:

 All right. This is what I am going to do. [I]n the circumstances here is that we have ... a two and a half day trial.

 ....

 And then we have the jury out for a day or two days out, sent home early on Friday; so they have been out not deliberating for over

the Labor Day weekend which is three days, Saturday, Sunday, Monday. So I think instead of delaying it further, I am going to excuse the absent juror ... under Rule 23(b) and I find that those circumstances; one, the fact that it's been this length of time; and that it would be a further delay before recommencing deliberations, that amounts to just cause ... ER p. 22.