**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rolando ARAUJO, Sr., and Antonio Araujo, Defendants–Appellants.**

**Nos. 94–1873, 94–1906.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1995.

Decided Aug. 8, 1995.

Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, Diane MacArthur (argued), Office of the U.S. Atty., Chicago, IL, for U.S.

Marc W. Martin, Joseph R. Lopez (argued), Genson, Steinback, Gillespie & Martin, Chicago, IL, for Rolando Araujo.

Joseph R. Lopez (argued), Chicago, IL, for Antonio Araujo.

Before RIPPLE, MANION, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

An eleven-member jury convicted Rolando Araujo, Sr. and Antonio Araujo of attempting to possess, with the intent to distribute, four kilograms of cocaine. Because we conclude that the district court abused its discretion in dismissing the twelfth juror, *see* Fed. R.Crim.P. 23(b), we reverse and remand for a new trial.

## I.

A grand jury on September 14, 1993 charged Araujo, Sr. and his son Araujo with attempting to purchase, with the intent of distributing, four kilograms of cocaine from an undercover agent, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Because our inquiry focuses on the district court's decision to

proceed with an eleven-member jury, we shall dispense with the facts underlying the charge.

Trial commenced on January 6, 1994. The presentation of evidence and argument lasted five days, and a jury of twelve began deliberating late in the morning of Thursday, January 13. The jury deliberated for the remainder of that day and for the entirety of the following day, periodically posing questions to the court and requesting transcripts from portions of the trial. No verdict had been reached by the end of the day on Friday, and the jurors were sent home for a three-day weekend. (Monday, January 17, 1994 marked the observance of Martin Luther King, Jr. Day.)

The jury reported for duty on Tuesday, January 18 absent one member. At 10:00 a.m., the court informed the parties that the missing juror (whom the court did not identify) had telephoned to explain that she was unable to make it to the courthouse that day due to difficulties associated with the weather. Chicago was in the midst of a severe cold snap, and the temperature that day was twenty degrees below zero; as the court observed, it was "as cold as it has been in this area in many a year . . . ." Tr. 760. The juror did express hope that she would be present the following day. The government recommended waiting a day to see if the absent juror would return, although it acknowledged that the unusual weather supplied the court with "just cause" to dismiss her and to proceed with eleven jurors pursuant to Federal Rule of Criminal Procedure 23(b). Faced with defense objections to proceeding with only eleven jurors, the court opted to wait a day and excused the jury until 9:30 the following morning.

On Wednesday, the juror who had been absent on Tuesday returned but the jury was again one shy of twelve. At approximately 10:00 a.m., the court informed the parties that the newly absent juror, a Mr. Lyles, had telephoned and was having problems with his automobile. Tr. 777. After taking a short recess in order to obtain further details, the court advised the parties that Mr. Lyles had telephoned a second time to explain that he was "stranded on the side of the road" and

was not able to leave his car. Tr. 778. The court believed it "unlikely" that Mr. Lyles would be able to make it to the courthouse. *Id.* When the court solicited the parties' views as to the next step, the government again suggested that just cause existed to dismiss the missing juror and to permit the remaining eleven to deliberate. *Id.* Both defendants reiterated their objection to proceeding with less than twelve jurors (Tr. 778–79); Araujo's counsel asked that "we wait and allow this individual some time" (Tr. 779).

The court decided that just cause existed to dismiss Mr. Lyles and to proceed with a jury of eleven:

Well, certainly I dislike altering the composition of the jury.

My problem is, as you know, that this jury was sent home Friday and here it is Wednesday and it has not been deliberating. I am fearful that the delay is itself a problem for the jury. Memories, of course, as you all know, do not necessarily improve but also I sent the other 11 folks home yesterday because of the weather waiting for a juror. That juror fortunately arrived.

I, under the circumstances, believe that we should go forward and we should not delay another day or lose another day with this jury so I am going to exercise my discretion because I think good cause exists. We have had two of the worst days of weather in the history of the city, and it is my concern that were I to delay again that I might be faced with even further problems.

So I am going to remove [Mr. Lyles] from this jury and proceed with a jury of 11.

Tr. 779–80. The eleven jurors present were then instructed to resume deliberations.

Later that same day, the jury found Araujo, Sr. guilty. After receiving a response from the court to a question concerning Araujo's defense of coercion, the jury on the following day found Araujo guilty. The district court subsequently sentenced Araujo, Sr. and Araujo to 135 months and 97 months in prison, respectively. Both defendants ap-

peal, contending that the decision to dismiss the twelfth juror and to permit the remaining eleven to deliberate to a verdict was improper.

## II.

■ Although the Constitution itself does not guarantee to the defendant in a criminal trial a jury of twelve, *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), Federal Rule of Criminal Procedure 23 incorporates that venerable common law tradition as a requirement. Until relatively recently, the rule authorized juries of less than twelve only upon stipulation of both the government and the defendant. As amended in 1983, however, the rule provides:

> Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

Fed.R.Crim.P. 23(b). The advisory committee's note reveals the rationale for the change:

> The amendment to subdivision (b) addresses a situation which does not occur with great frequency but which, when it does occur, may present a most difficult issue concerning the fair and efficient administration of justice. This situation is that in which, after the jury has retired to consider its verdict and any alternate jurors have been discharged, one of the jurors is seriously incapacitated or otherwise found to be unable to continue service upon the jury. The problem is acute when the trial has been a lengthy one and consequently the remedy of mistrial would necessitate a second expenditure of substantial prosecution, defense and court resources. See, e.g., *United States v. Meinster,* 484 F.Supp. 442 (S.D.Fla.1980), aff'd sub nom. *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981) (juror had heart attack during deliberations after "well over four months of trial"); *United States v. Barone,* 83 F.R.D. 565 (S.D.Fla.1979) (juror removed upon recommendation of psychiatrist during deliberations after "approximately six months of trial").

> It is the judgment of the Committee that when a juror is lost during deliberations, especially in circumstances like those in *Barone* and *Meinster,* it is essential that there be available a course of action other than mistrial....

> . . . . .

> The amendment provides that if a juror is excused after the jury has retired to consider its verdict, it is within the discretion of the court whether to declare a mistrial or to permit deliberations to continue with 11 jurors. If the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken. On the other hand, if the trial has been protracted the court is much more likely to opt for continuing with the remaining 11 jurors.

Rule 23 advisory committee's note. The appellate courts that have considered the question have found the amended rule constitutional. *See United States v. Ahmad,* 974 F.2d 1163, 1164 (9th Cir.1992); *United States v. Gabay,* 923 F.2d 1536, 1543 (11th Cir. 1991); *United States v. Smith,* 789 F.2d 196, 205 (3d Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); *United States v. Stratton,* 779 F.2d 820, 831, 834–35 (2d Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726, and *cert. denied sub nom. Parness v. United States,* 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986). The Araujos concede the constitutionality of Rule 23; they argue only that the trial court improperly exercised its authority to dismiss a juror and to allow the remaining eleven to render a verdict.

■ When a district court decides, without the agreement of the parties, to permit an eleven-member jury to deliberate to a verdict, two distinct questions are presented: first, whether the court had just cause to excuse the twelfth juror, and second, whether the district court was correct in allowing the bobtailed jury to continue rather than declaring a mistrial. *United States v. Glover,* 21 F.3d 133, 135 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 360, 130

L.Ed.2d 314 (1994). We review the district court's assessment as to each of these questions for abuse of discretion. *United States v. Patterson*, 23 F.3d 1239, 1252 (7th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994); *Glover*, 21 F.3d at 135.

■ Neither Rule 23 nor the advisory committee's note supplies a definition of "just cause"; consequently, courts have given that term meaning on a case by case basis. Typically, courts have found just cause to dismiss a juror once deliberations are under way when the juror becomes seriously incapacitated and "waiting for the juror will result in a substantial or potentially uncertain delay." *United States v. Dischner*, 974 F.2d 1502, 1513 (9th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993). *See also United States v. McFarland*, 34 F.3d 1508, 1512 (9th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 2257, 132 L.Ed.2d 264 (1995); *Gabay*, 923 F.2d at 1543 (quoting *Notes of the Committee on the Judiciary*, Senate Report No. 95–354, 1977 U.S.Code Cong. & Admin.News 527); *but see United States v. Reese*, 33 F.3d 166, 173 (2d Cir.1994) (affirming dismissal of juror for previously scheduled business trip), *cert. denied*, — U.S. —, 115 S.Ct. 756, 130 L.Ed.2d 655 (1995); *Stratton*, 779 F.2d at 832 (affirming dismissal of juror for religious observance). Before dismissing a juror pursuant to Rule 23(b), the district court must render a finding that it is necessary to do so for just cause; and if the record does not already make clear the precise nature or likely duration of the juror's inability to serve, the court bears an affirmative duty to inquire further into those circumstances. *United States v. Patterson*, 26 F.3d 1127, 1129 (D.C.Cir.1994); *cf. United States v. Wilson*, 894 F.2d 1245, 1250–51 (11th Cir.) (court was not obligated to contact absent juror or her physician where juror's history of illness and her recent telephone call to court clerk sufficiently established her incapacity), *cert. denied sub nom. Levine v. United States*, 497 U.S. 1029, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990); *United States v. Acker*, 52 F.3d 509, 515–16 (4th Cir.1995) (no abuse of discretion in dismissing injured juror where court did not know where she was seeking medical treatment and thus was unable to contact her).

The rule and the committee's note also offer little guidance as to the decision, once a juror has been excused for just cause, whether to grant a mistrial or proceed with the remaining eleven jurors. It is clear from the note that the advisory committee believed the option of an eleven-member jury to be most appropriate when the trial has been lengthy and re-trial would thus be particularly burdensome. Yet, "Rule 23(b) does not limit its application to lengthy or complex cases." *United States v. O'Brien*, 898 F.2d 983, 986 (5th Cir.1990); *see also Patterson*, 23 F.3d at 1252 n. 17; *United States v. Armijo*, 834 F.2d 132, 135 (8th Cir.1987), *cert. denied*, 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 507 and *cert. denied sub nom. Kistner v. United States*, 485 U.S. 991, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988). Indeed, the committee merely observes that when the trial has been brief, the court *"might well"* opt to declare a mistrial rather than accept a verdict from eleven jurors. Rule 23 advisory committee's note (emphasis supplied). Still, the committee does describe the decision to proceed with an eleven-member jury as an "unusual step" (*id.*), a choice of words suggesting that it is not one to be undertaken lightly. *Armijo*, 834 F.2d at 135.

■ Recognizing the considerable latitude that Rule 23 bestows on a district court, we nonetheless conclude that the court abused its discretion in dismissing the juror here. The few facts that are known to us simply do not reveal how long Mr. Lyles would be unable to participate in the deliberations; thus, the record lacks the requisite support for the district court's determination that he should be dismissed for just cause. In this respect, the District of Columbia Circuit's decision in *Patterson* and the Ninth Circuit's decision in *United States v. Tabacca*, 924 F.2d 906 (9th Cir.1991), are illuminating. In *Patterson*, following one day of deliberations, a sixty-eight year-old-juror telephoned the court clerk at 8:15 a.m. to explain that she was experiencing chest pains and that her doctor wished to see her immediately. The court granted permission for the juror to visit her doctor and asked her to report back

afterward. At 11:10 a.m., the court, not having heard anything further from the absent juror, sought the defendant's consent to proceed with a jury of eleven. The defense objected and urged the court to await further news of the juror's condition. The court declined and decided to dismiss the missing juror and allow the remaining eleven to proceed with deliberations. As to the likelihood that the absent juror might be able to resume her service, the court commented:

> The fact that a 68–year–old woman reports that she's having severe chest pains, has gone to the doctor, and has been gone two and a half hours now suggests to me that this is not a transient thing. It is unlikely that delay later in the day would cure the situation.

26 F.3d at 1128. The court of appeals reversed, finding insufficient evidence of just cause to excuse the juror:

> [T]he judge below made no attempt to learn the precise circumstances or likely duration of the twelfth juror's absence. Instead, less than three hours after authorizing the juror's doctor visit, he invoked rule 23(b) to excuse her from duty and permit deliberation by an eleven-member jury. His expressed confidence in the remaining jurors' ability to assess the evidence and reach a verdict did not relieve him of his duty under rule 23(b) to find just cause making it necessary to excuse the absent juror. Further, the juror's age and the nature of her complaint do not by themselves support the inference that she would be unable to complete her service. She might have been able to return to court in short order or she might have had a serious medical problem precluding further participation in the trial. We have no way of knowing because the trial judge made no effort to find out.

*Id.* (following *United States v. Essex*, 734 F.2d 832, 842 (D.C.Cir.1984)).

In *Tabacca*, the Ninth Circuit similarly found no support for the district court's decision to dismiss a missing juror for just cause. As in the case before us, jury deliberations had been interrupted by a three-day weekend. On the Tuesday morning following Labor Day, a juror telephoned the court to report that his wife had mistakenly taken his car keys and that he had no way to reach the courthouse. Over the defendant's objection, the court dismissed the missing juror and accepted a verdict from the remaining eleven. The court of appeals reversed, noting that the twelfth juror was "certain to be available the next day" and that a one-day delay, even following a three-day weekend, was not an unduly burdensome alternative. 924 F.2d at 915.

■ *Patterson* and *Tabacca* exemplify the district court's duty under Rule 23(b) to ascertain the likely duration of a missing juror's absence before dismissing him or her. That obligation is consistent with the rule's reference to dismissal when the court finds it *"necessary"* to dismiss a juror for just cause (a term that cabins the district court's discretion somewhat) and with the advisory committee's expectation that this necessity would present itself when "one of the jurors is seriously incapacitated or otherwise found to be unable to continue service upon the jury." Rule 23, advisory committee's note. When the record is unclear as to the juror's inability to serve, and when the facts that are known leave open the possibility that the juror might have been able to resume her service after a reasonably brief delay, just cause for dismissal most likely is lacking. So, here, the facts known to us do not confirm that it was indeed necessary to dismiss Mr. Lyles for just cause (or, more precisely, that the district court reasonably could have thought it to be necessary). The temperature in Chicago was unusually low, and although the record could be more definite on this point, we assume that it was the cold that left Mr. Lyles stranded on the side of the road.[1] Naturally, he did not wish to abandon his car, and given the likelihood that other motorists were experiencing similar problems, it may have been some time before he could summon help and continue on his way to the courthouse. Yet, as the court was

---

1. The district court, in announcing Mr. Lyles' absence, observed that "[a]gain we are plagued with weather problems...." Tr. 777. The record does not otherwise indicate that Mr. Lyles' car troubles were due to the weather.

in *Patterson*, we are left to speculate on just how soon Mr. Lyles might have been able to rejoin the other jurors. The record reveals that Mr. Lyles lived in Chicago (Tr. 777) and therefore was not required to travel a great distance to reach the courthouse, and it is possible that he might have reported later that same day. Thus, just as in *Tabacca*, we have no reason to believe his absence would have continued beyond one day. Even if his car had remained inoperable, the record does not permit the inference that no alternative means of reaching the courthouse were available to him.

Central to the court's decision, of course, were the fact of another juror's absence on the previous day, the possibility that the unusually severe cold might result in other absences, and the increasingly lengthy break in the jury's deliberations. To the extent that the just cause determination turns on the *individual juror's* ability to serve (*see* Rule 23, advisory committee's note), these considerations would seem irrelevant. The district court nonetheless found them material to an assessment of the likelihood that the jury *as a whole* would ultimately be able to render a verdict. In other words, taking into account the weather, repeated juror absences, and the interruption in the jury's deliberations, the district court deemed it necessary to resume deliberations immediately, lest other problems surface and cause additional, memory-dulling delays. Thus, Mr. Lyles was excused not so much for circumstances that rendered *him* unfit or unable to resume service on the jury, but for those that had affected or might affect all of the jurors. This rationale represents somewhat of a departure from the case law, which traditionally has focused on the excused juror alone. Perhaps it is merely exemplary of the flexibility needed to handle the multitude of unforeseen circumstances that may confront a district court during deliberations (*see, e.g.,*

*Reese*, 33 F.3d at 173; *Stratton*, 779 F.2d at 832), although it is an approach that raises some thorny questions.[2] We need not rule on the validity of looking beyond the excused juror's capacity to serve, however, as we do not think the more global concerns that the district court cited here were borne out on the record.

The frigid temperatures no doubt increased the risk that individual jurors might be delayed in reaching the courthouse or be unable to attend altogether on a given day— as the two absences in this case demonstrate. But neither adverse weather nor transportation difficulties are themselves extraordinary, and in this case the consequences were relatively modest: one juror was absent for a day and another would have been absent no longer than that, so far as the record reveals. The district court appears to have been most troubled about the cumulative delay caused by the absences, and we agree that the jury's collective memory was not likely to have been sharpened by the prolonged break in its deliberations. *See Stratton*, 779 F.2d at 832. On the other hand, the trial itself had been short, the evidence straightforward (eleven witnesses testified and the exhibits were relatively few in number), and there is nothing in the record suggesting that the jury would have been unduly hampered by whatever further delay the wait for Mr. Lyles would have required. *See Tabacca*, 924 F.2d at 915 (noting that after a short trial, an additional day's delay was "unlikely to induce dulled memories on the part of the jurors, even if they had taken a three-day weekend"). Nor, ultimately, can we do any more than guess about the prospect of additional delays. There is nothing in the record suggesting that other jurors were experiencing difficulty reaching the courthouse or, for that matter, that the cold snap was expected to continue for the remainder of the week.[3] The district

2. Suppose, for example, that a juror suffered a run-of-the-mill automobile breakdown but had no doubt that she could resume service on the following day. Could the court dismiss her for just cause because it expected *another* juror to begin a previously scheduled vacation two days hence? Or suppose that a jury had experienced repeated breaks in its deliberations due to chronic power failures in the courthouse. Could a juror who must be absent one day due to child

care difficulties be excused because the court is fearful that the jurors' memories are becoming too dim?

3. On the day of the first juror's absence, the prosecutor voiced her understanding from listening to the weather forecast that temperatures were expected to rise as the week progressed. Tr. 761. On the day of Mr. Lyles' absence, it appears from the remarks of counsel and the

judge understandably made a difficult, on-the-spot judgment in the midst of events the outcome of which he could not predict. *See Stratton,* 779 F.2d at 832. Unfortunately, the record simply does not include enough concrete information to support the court's determination that it was necessary to dismiss Mr. Lyles for just cause.

■ In light of our conclusion that the district court erred in dismissing the twelfth juror, we need not consider whether the court abused its discretion in opting to permit the remaining eleven jurors to deliberate to a verdict rather than declaring a mistrial. We merely offer this observation: proceeding with a jury of eleven over the defendant's objection is truly an "unusual step," (Rule 23 advisory committee's note), and the equities must be sufficiently compelling to support that decision. Cases from our sister circuits have affirmed lower court decisions to proceed with juries of eleven even when the trials have been relatively short, citing factors such as the number of witnesses and exhibits presented as evidence that retrying the case would be burdensome. *See Glover,* 21 F.3d at 136 (twenty witnesses and numerous exhibits); *United States v. Egbuniwe,* 969 F.2d 757, 763 (9th Cir.1992) (twenty-five witnesses, over 120 exhibits, 1800 pages of testimony); *cf. Armijo,* 834 F.2d at 135 (affirming with "reservation" district court's decision to proceed with eleven jurors after five-day trial involving 800 pages of testimony and argument; noting this was "a very close case").[4] We need not decide now whether we would follow these cases, although we think it safe to say that if they do not actually exceed the discretion afforded the court by Rule 23, they certainly lie at the outermost boundaries of that discretion. The option of a retrial will always involve a significant expenditure of money, time, and judicial resources, no matter how brief the trial. In our view, the burden must be of a degree or a kind that is out of the ordinary to justify the decision to deprive the defendant of a jury of twelve.

### III.

Because the district court lacked just cause to excuse the twelfth juror pursuant to Rule 23(b), we reverse the defendants' convictions and remand for a new trial.

REVERSED AND REMANDED.

---

court that the temperature was somewhat warmer although still unusually cold. Tr. 779.

4. *See also Patterson,* 23 F.3d at 1252 n. 17 (finding, without extended discussion, no error, "plain or otherwise," in district court's decision to proceed with eleven jurors after two-and-one-half-day trial rather than declare mistrial; issue was raised for first time on appeal).