**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan ALMONACID, Defendant–**
**Appellant.**

No. 02–1931.

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 2003.

Decided July 17, 2003.

Before EASTERBROOK, RIPPLE, and WILLIAMS, Circuit Judges.

**ORDER**

Juan Almonacid was convicted after a jury trial of conspiracy to distribute and possess cocaine for distribution, 21 U.S.C. §§ 846, 841(a)(1), and sentenced to 235 months' imprisonment. On appeal Almonacid first questions the sufficiency of the

evidence to convict him, arguing that the government's witnesses were unreliable. He also argues that the district court abused its discretion by dismissing a juror who was late to court on the last day of trial. Because the witnesses' testimony was not incredible as a matter of law and because dismissing the juror on the last day of trial was not an abuse of discretion, we affirm Almonacid's conviction.

## I. BACKGROUND AND ANALYSIS

Testimony at trial detailed Almonacid's participation in a nationwide drug conspiracy run by Hugo Catano. Specifically, the evidence established: (1) on at least three occasions Almonacid led a courier for the Catano organization to a safehouse where he transferred cocaine from the courier's Range Rover to Almonacid's red Chevrolet; (2) on another occasion Almonacid drove the courier to meet with Catano and pick up (apparently drug-related) money; (3) on at least two occasions Almonacid received around 100 kilograms of cocaine from that same courier at a house that Almonacid rented; and (4) Almonacid helped arrange for and met with a chemist to test the purity of a cocaine shipment.

### A. Sufficiency of the Evidence

On appeal Almonacid makes four arguments why the evidence underlying his conviction was legally insufficient, each of which disputes the credibility of the government's witnesses. When reviewing a challenge to the sufficiency of the evidence "we draw all reasonable inferences from the evidence in favor of the government, and we will reverse only if no reasonable jury could have found the defendant guilty of the charged offense beyond a reasonable doubt." *United States v. Alcantar*, 83 F.3d 185, 189 (7th Cir.1996). A witness's testimony is incredible as a matter of law only in "exceptional circumstances, such as 'where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.'" *United States v. Ruiz*, 178 F.3d 877, 880 (7th Cir.1999) (quoting *United States v. Hach*, 162 F.3d 937, 942 n. 1 (7th Cir.1998)).

Almonacid has not argued that it was physically impossible for the witnesses to observe that which they claimed they had observed, nor that the laws of nature made it impossible for the occurrences to have taken place. Instead, he points to evidence undermining the witnesses' credibility, which of course is a matter for the jury to consider but is not a basis for reversal on appeal. *United States v. Molinaro*, 877 F.2d 1341, 1347 (7th Cir.1989) (observing that arguments challenging witness credibility are "wasted on an appellate court" because "the jury ... is the only entity entitled to make such credibility determinations"). First, Almonacid observes that prior to trial cooperating witnesses had initially lied to law enforcement or intentionally withheld or omitted information. But such inconsistencies, we have held, do not without more render witnesses' testimony incredible as a matter of law. *See United States v. Marin*, 7 F.3d 679, 688 (7th Cir.1993). Second, Almonacid notes that co-conspirator Blanca Rojas failed to list him on an initial chart identifying members of the Catano organization. This fact is likewise insufficient to undermine the verdict, as the jury was made aware of Rojas's omission and could therefore itself determine the proper weight to afford her testimony. Third, Almonacid contends that the cooperating witnesses made statements at trial that were inconsistent with their own or other witnesses' statements. Nevertheless, "inconsistencies in [a witness's] testimony [are] for the jury to sort out." *United States v. Sophie*, 900 F.2d

1064, 1079 (7th Cir.1990). Finally, Almonacid points out that each cooperating witness had entered into a favorable plea agreement with the government. But here again, that the witnesses cooperated with authorities does not make their testimony incredible as a matter of law. *See, e.g., United States v. Henderson,* 58 F.3d 1145, 1149 (7th Cir.1995) (rejecting a challenge attacking the fact that witnesses were convicted criminals testifying pursuant to favorable plea agreements). Because Almonacid had the opportunity to air all of these matters to the jury, and because the jury could have chosen to discredit the witnesses' testimony, Almonacid's challenge to the sufficiency of the evidence must fail.

### B. Dismissal of the Juror

■ Almonacid also argues that the district court abused its discretion by dismissing a juror on the last day of trial. We disagree. We will not overturn a court's decision to dismiss a juror pursuant to Federal Rule of Criminal Procedure 24(c) unless the record shows no legitimate basis for the court's decision, and the appellant demonstrates that the dismissal prejudiced his case. *United States v. Vega,* 72 F.3d 507, 512 (7th Cir.1995).

Almonacid here has made no effort to show how dismissing the juror prejudiced him. He asserts that the dismissed juror was of "similar" ethnicity,[1] but does not otherwise explain how this fact was preju-

dicial.[2] As such, the argument is waived. *See, e.g., United States v. McClellan,* 165 F.3d 535, 550 (7th Cir.1999) ("If [the appellant], in fact, is suggesting that the judge in this case did not respond to the jury request with 'concrete accuracy,' he fails to explain why, and we are not in the business of formulating arguments for the parties.") Moreover, even if Almonacid had preserved this challenge, it still would fail because dismissing a juror with a similar trait to the defendant, such as ethnicity, does not automatically constitute prejudice. *See United States v. Doerr,* 886 F.2d 944, 970–971 (7th Cir.1989) ("youthful" jurors).

True, the district judge apparently did not attempt to locate the juror and determine how late she would be or how long she would be unable to serve. But making such an inquiry, while certainly the better practice, is not necessarily required. *United States v. Peters,* 617 F.2d 503, 505 (7th Cir.1980) (noting that a judge has no way to discern when a tardy juror will eventually arrive and that while a telephone call may be preferable, it is not required by Rule 24(c)); *see also United States v. Johnson,* 223 F.3d 665, 669 (7th Cir.2000). As we observed in *Peters,* there is hardly anything that would make a juror less able to serve than his failure to show up. 617 F.2d at 505. Almonacid has not demonstrated that the district court abused its discretion in dismissing the juror.

---

**1.** There is some dispute about whether the juror was of Hispanic or Filipino descent. For the sake of argument, we will assume that the juror was Hispanic. (Almonacid is from Spain.)

**2.** Almonacid's brief does provide a short discussion comparing his case to that in *United States v. Araujo,* 62 F.3d 930 (7th Cir.1995). In *Araujo,* however, the juror was dismissed after the jury had started deliberating, pursuant to Federal Rule of Criminal Procedure

23(b). Rule 23(b) then required "just cause" to dismiss a juror and "if the record does not already make clear the precise nature or likely duration of the juror's inability to serve, the court bears an affirmative duty to inquire further into those circumstances." *Araujo,* 62 F.3d at 934. Rule 24(b), however, requires only a "legitimate basis" for dismissing the juror. *Vega,* 72 F.3d at 512. *Araujo,* therefore, is inapplicable here.

## II. CONCLUSION

The judgment of the district court is AFFIRMED. ▪