# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of July, two thousand twenty-five.

Present:

DEBRA ANN LIVINGSTON,
　　*Chief Judge,*
RAYMOND J. LOHIER, JR.,
RICHARD J. SULLIVAN,
JOSEPH F. BIANCO,
MICHAEL H. PARK,
WILLIAM J. NARDINI,
STEVEN J. MENASHI,
EUNICE C. LEE,
BETH ROBINSON,
MYRNA PÉREZ,
ALISON J. NATHAN,
SARAH A. L. MERRIAM,
MARIA A. KAHN,
　　*Circuit Judges.*

_____

UNITED STATES OF AMERICA,

　　*Appellee,*

　　v.                                                    22-1289


RICKEY JOHNSON, AKA SEALED

DEFENDANT 1, AKA NEIL DAWN
DEFARREN,

        *Defendant-Appellant*.

_____

| | |
|---|---|
| For Appellee: | KYLE A. WIRSHBA, Assistant United States Attorney (Patrick R. Moroney, Stephen J. Ritchin, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |
| For Defendant-Appellant: | COLLEEN P. CASSIDY, Federal Defenders of New York, New York, NY. |

Following disposition of this appeal on September 6, 2024, an active judge of the Court requested a poll on whether to rehear the case *en banc*. A poll having been conducted and there being no majority favoring *en banc* review, the petition for rehearing *en banc* is hereby **DENIED**.

Raymond J. Lohier, Jr., *Circuit Judge*, joined by Joseph F. Bianco, *Circuit Judge*, and joined as to Parts I and II by Maria A. Kahn, *Circuit Judge*, concurs by opinion in the denial of rehearing *en banc*, and is joined as to Part I by Eunice C. Lee, Beth Robinson, Myrna Pérez, and Alison J. Nathan, *Circuit Judges*.

Steven J. Menashi, *Circuit Judge*, joined by Debra A. Livingston, *Chief Judge*, Richard J. Sullivan, and Michael H. Park, *Circuit Judges*, concurs by opinion in the denial of rehearing *en banc*.

Sarah A. L. Merriam, *Circuit Judge*, joined by Eunice C. Lee, Beth Robinson, Myrna Pérez, and Alison J. Nathan, *Circuit Judges*, dissents by opinion from the denial of rehearing *en banc*.

Denny Chin, *Circuit Judge*, filed a statement with respect to the denial of rehearing *en banc*.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

LOHIER, *Circuit Judge*, joined by BIANCO, *Circuit Judge*, and joined as to Parts I and II by KAHN, *Circuit Judge*, concurring in the denial of rehearing in banc, and joined as to Part I by LEE, ROBINSON, PÉREZ, and NATHAN, *Circuit Judges*:

## I

We are not all in agreement as to whether in banc review of this matter is warranted. But it is not uncommon in a collaborative court for members of the court to join various portions of other colleagues' opinions. Here, eight members of this Court — Judges Bianco, Lee, Robinson, Pérez, Nathan, Merriam, Kahn, and I — agree that the question of whether a structural error must implicate a defendant's constitutional rights remains an open one in this Circuit because the panel opinion's statements bearing on a hypothetical structural error that is non-constitutional are clearly dicta. *Accord* Merriam, *J.*, Dissenting Op. at 6.

## II

That said, I agree that we should deny rehearing in banc in this unusual case. This case squarely raises one basic issue: whether a violation of Federal Rule of Criminal Procedure 23(b), which requires a twelve-person jury in a federal criminal trial, affects a defendant's constitutional or substantial rights. This question, in my view, has already been answered by our Court and the

1

Supreme Court. In *Williams v. Florida*, 399 U.S. 78 (1970), the Supreme Court held that the Sixth Amendment right to a jury trial does not mandate precisely twelve jurors. Following *Williams*, we held that the denial of a twelve-person jury does not "impair the 'substantial rights' of a criminal defendant." *See United States v. Stratton*, 779 F.2d 820, 833–34 (2d Cir. 1985).

Good arguments may well exist for revisiting *Williams* (and, by extension, our decision in *Stratton*). *See Khorrami v. Arizona*, 143 S. Ct. 22, 23–27 (2022) (Gorsuch, *J.*, dissenting from denial of certiorari); *Cunningham v. Florida*, 144 S. Ct. 1287, 1287–88 (2024) (Gorsuch, *J.*, dissenting from denial of certiorari); *United States v. Johnson*, 117 F.4th 28, 60–61 (2d Cir. 2024) (Chin, *J.*, dissenting). But we "should . . . leav[e] to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). So we remain bound by *Williams* unless and until the Supreme Court tells us otherwise. For now, in light of *Williams* and *Stratton*, it appears that the denial of the right to a twelve-person jury does not qualify as a structural error that "defies analysis by harmless error standards." *See Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017) (cleaned up).

III

The panel opinion suggests a second question lurking in the background: whether structural errors must implicate a constitutional right. It says the answer is yes, as a matter of first impression in our Circuit and contrary to the conclusion reached by one of our sister Circuits. *See United States v. Curbelo*, 343 F.3d 273, 280, 285 (4th Cir. 2003). But the panel opinion reasons that the error in this case is *not* structural because it did not affect even a substantial right. Therefore, the opinion's statements bearing on a hypothetical structural error that is non-constitutional are clearly dicta. In other words, the panel opinion's assertion is decidedly *not* a holding of this Court.

Let me explain why. In holding that the Rule 23(b) violation here is subject to harmless error analysis, the panel opinion concludes that the existence of controlling precedent establishing that "the right to a twelve-member jury is neither a constitutional *nor even a substantial right* . . . mean[s] that a violation of Rule 23(b)'s twelve-member requirement cannot amount to a structural error." *Johnson*, 117 F.4th at 40 (emphasis added). The opinion's discussion elsewhere that a structural error must affect a defendant's constitutional rights — as opposed to "substantial rights" — is thus "unnecessary to the disposition of the

case before it."[1] *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 508 (2d Cir. 1996); *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996) ("We adhere . . . not to mere *obiter dicta*, but rather to . . . those portions of [an] opinion necessary to [its] result . . . ."); *Cotto v. Herbert*, 331 F.3d 217, 250 n.20 (2d Cir. 2003) ("We have not hesitated to describe our prior statements as dicta when they were not necessary to the holdings of the decisions in which they were made."). *See generally* Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249 (2006).

Of course, the "defining feature of a structural error . . . is that it affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself." *United States v. Mendonca*, 88 F.4th 144, 170–71 (2d Cir. 2023) (Lohier, *J.*, concurring) (quoting *Weaver*, 582 U.S. at 295 (cleaned up)). That framing suggests that the error need not affect a constitutional right. *Cf. Weaver*,

---

[1] The panel opinion's reasoning as to *why* the error here did not affect even a substantial right is irrelevant to this inquiry. Because its disposition rests on that conclusion, its additional observations on the nature of structural error are unnecessary to the result and therefore dicta. Especially where, as here, a significant majority of active judges on our Court agree on this basic point, a simple contrary pronouncement, *see* Menashi, *J.*, Concurring Op. at 3, "cannot transmute dictum into" a holding. *See United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, *J.*, concurring) ("A judge's power to bind is limited to the issue that is before him; he cannot transmute dictum into decision by waving a wand and uttering the word 'hold.'").

582 U.S. at 295 (explaining that "[t]he precise reason why a particular error is not amenable to [harmless error] analysis — and thus the precise reason why the Court has deemed it structural — varies in a significant way from error to error," however those errors are labeled). Moreover, this Court has elsewhere signaled that, in an appropriate case, a non-constitutional error involving a trial's framework might be found to be structural. *See Shabazz v. United States*, 923 F.3d 82, 84 (2d Cir. 2019) ("Categories of error found by the Supreme Court to be 'structural' *ordinarily* relate to 'certain basic, constitutional guarantees that should define the framework of any criminal trial.'" (emphasis added) (quoting *Weaver*, 582 U.S. at 295)). The panel opinion's assertion to the contrary is, as Judge Chin suggested in dissent, dicta built upon dicta. *See Johnson*, 117 F.4th at 59 (Chin, *J.*, dissenting) (observing that "[t]he Supreme Court has never held that an error is structural *only* if it affects a defendant's constitutional rights"; it has only "occasionally suggest[ed] in dicta that structural errors implicate constitutional rights").

For these reasons, as stated in Part I, the question of whether a structural error must implicate a defendant's constitutional rights remains an open one in this Circuit. On that point, as also stated in Part I, we agree with our colleagues

who have dissented from the denial of rehearing in banc. *See, e.g.*, Merriam, J.,
Dissenting Op. at 3 ("[W]hether a non-constitutional error can be structural is, at
a minimum, an open question."). Whether a non-constitutional error can count
as a structural error is a question not squarely presented in this case, and any
attempt by our in banc Court to resolve the issue in a vacuum would itself count
as dicta. As the panel majority will not dispute, the only holding in its opinion is
that the rare trial defect at issue here is not structural because it impairs "neither
a constitutional [right]" under *Williams* "nor even a substantial right." *Johnson*,
117 F.4th at 40.

IV

Because the opinion's holding is limited to the very narrow issue of
whether a Rule 23(b) violation affects a defendant's constitutional or substantial
rights, I concur in the denial of rehearing in banc.

MENASHI, *Circuit Judge*, joined by LIVINGSTON, *Chief Judge*, and SULLIVAN and PARK, *Circuit Judges*, concurring in the denial of rehearing *en banc*:

The court has voted against rehearing this case *en banc*. I concur in its order because *Johnson* was correctly decided.

## I

In *Johnson*, the court reached three holdings relevant here. First, the court held that the right to a twelve-person jury is not a constitutional right. *See United States v. Johnson*, 117 F.4th 28, 40 (2d Cir. 2024). The Supreme Court has decided that "the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics.'" *Williams v. Florida*, 399 U.S. 78, 102 (1970) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 182 (1968) (Harlan, J., dissenting)). Under current precedent, therefore, "there is no constitutional right to a twelve-member jury." *Johnson*, 117 F.4th at 40.

Second, the court held that a structural error must involve the violation of a constitutional right. *See id.* at 40-41. The Federal Rules of Criminal Procedure provide that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). "Rule 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988). Indeed, "a federal court may not invoke supervisory power to circumvent the harmless-error inquiry." *Id.* at 254. The Supreme

Court has explained that we may deviate from the harmless-error standard only for "a limited class of fundamental constitutional errors that defy analysis by harmless error standards." *Neder v. United States*, 527 U.S. 1, 7 (1999) (internal quotation marks omitted). "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver v. Massachusetts*, 582 U.S. 286, 294-95 (2017). A right conferred only by the Federal Rules of Criminal Procedure cannot create an exception to Rule 52(a). Accordingly, a structural error must implicate a constitutional right that exists apart from the rules.

Third, the court held that Johnson's conviction by eleven jurors was a harmless error. *See Johnson*, 117 F.4th at 43-44. Because (1) the Constitution does not require a twelve-person jury and (2) structural errors must be constitutional errors, Johnson's conviction by eleven jurors is subject to harmless-error review. *See id.* at 41. For the three counts on which he was convicted, the evidence against Johnson was overwhelming. "The conduct of the jury did not indicate that there was significant disagreement" over those counts. *Id.* at 44. Accordingly, while the district court erred in violation of Rule 23(b) when it dismissed the twelfth juror before the jury started deliberating, the error was harmless. *See id.*

## II

Now that the *en banc* court has decided not to reconsider *Johnson*, the dissent attempts to achieve such reconsideration by labeling one of its key holdings as dicta that can be ignored in future cases. The dissent claims that *Johnson* only "suggests that structural error *must* be anchored in constitutional error." *Post* at 5-6; *see also ante* at 3.

That is not what *Johnson* says. "I encourage readers to go to the source, rather than rely on dissents, to understand what the Court holds." *Bondi v. VanDerStok*, 145 S. Ct. 857, 877 (2025) (Sotomayor, J., concurring). The *Johnson* opinion does not "suggest" but squarely holds that the structural error doctrine is limited to a specific type of constitutional error. It is difficult for a reader of the opinion to miss this holding. *See Johnson*, 117 F.4th at 40 ("We depart from this harmless-error analysis only for a limited class of *fundamental constitutional errors* that defy analysis by harmless error standards.") (internal quotation marks omitted); *id.* at 41 ("The Supreme Court has emphasized that the purpose of the structural error doctrine is to ensure insistence on certain *basic, constitutional guarantees* that should define the framework of any criminal trial.") (internal quotation marks omitted); *id.* ("[Structural] error requires automatic reversal and is not subject to harmless error analysis because it involves a deprivation of a constitutional protection so basic that in its absence, a criminal trial cannot reliably serve its function.") (internal quotation marks omitted); *id.* ("Generally speaking structural errors must, at a minimum, be constitutional errors.") (alteration omitted) (quoting *United States v. Gonzalez-Huerta*, 403 F.3d 727, 734 (10th Cir. 2005)); *id.* at 42 ("[T]he Supreme Court and the appellate courts have repeatedly made clear that structural errors necessarily must affect a defendant's constitutional rights.") (internal quotation marks omitted); *id.* at 42 n.4 ("[S]tructural errors include only a limited class of fundamental constitutional errors.") (internal quotation marks omitted); *id.* at 43 ("[W]e must decline to recognize a new type of structural error that does not affect a constitutional or even a substantial right.").

## A

The dissent describes this holding as "unnecessary to the majority's decision" and as "therefore dicta." *Post* at 6 n.1. That is

3

wrong. A dictum is "a comment on how the court would decide some other, different case" and "does not explain why the court's judgment goes in favor of the winner." Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1256 (2006). A holding, by contrast, announces and explains the judgment of the court. *See id.* at 1256-57 & n.20. The holding includes the explanation as well as the result. For that reason, "it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996); *see also Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 608 (2d Cir. 1998). We must "adhere … to the well-established *rationale* upon which the Court based the results of its earlier decisions." *Seminole Tribe*, 517 U.S. at 66-67 (emphasis added).

The text and logic of *Johnson* require that structural errors be limited to specific constitutional errors. The opinion held that "the erroneous decision to proceed with eleven jurors does not warrant vacatur" because "the error was harmless." *Johnson*, 117 F.4th at 44. The court reached that result based on the rule that only violations of basic constitutional rights can generate structural errors:

> In the absence of the deprivation of a constitutional right so fundamental that the trial cannot be trusted to perform its function, the Supreme Court has repeatedly made clear that we must adhere to the general rule that a constitutional error does not automatically require reversal of a conviction. If the general rule applies to all constitutional errors beyond a select few at the constitutional bedrock, it necessarily applies to non-constitutional errors that are even further removed from that foundation. Because the right to twelve rather than eleven jurors that Rule 23(b) provides does not implicate

4

the Constitution—at its bedrock or otherwise—we review a violation of that rule for harmless error.

*Johnson*, 117 F.4th at 41 (internal quotation marks, alterations, and citations omitted).

The court did not suggest in passing that structural errors must be constitutional but directly endorsed that proposition in "a portion of the opinion necessary to the result." *CompassCare v. Hochul*, 125 F.4th 49, 59 (2d Cir. 2025) (internal quotation marks and alterations omitted). The proposition was central to the reasoning and necessary to the outcome of the case. The issue "was before the court; was argued before the court; and was passed upon by the court. It was not dictum." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 508 (2d Cir. 1996) (internal quotation marks, alteration, and citations omitted).

The dissent claims that the court in *Johnson* did not need to address whether structural errors must be constitutional errors because the court decided that the lack of a twelve-person jury "'did not implicate the fundamental fairness of the trial procedure' and therefore did not constitute structural error." *Post* at 6 n.1. That is a tendentious misreading of the opinion. *Johnson* considered fundamental fairness only after concluding that structural errors must be constitutional. *See Johnson*, 117 F.4th at 41-42. And the opinion made clear that the reason why the lack of a twelve-person jury does not implicate fundamental fairness is that it *does not implicate a constitutional right*: "[T]he Supreme Court has told us that convening a jury 'composed of precisely 12' is 'unnecessary to effect the purposes of the jury system' because the number twelve is 'wholly without significance.'" *Id.* at 42 (quoting *Williams*, 399 U.S. at 102).

5

The court did not adopt an independent ground for concluding that harmless-error analysis applied. The court had already concluded that harmless-error analysis applied because a structural error must be constitutional. *See id.* at 40-41. It then elaborated on that reasoning to answer Johnson's objection "that a violation of Rule 23(b) should be considered a structural error because it 'affects the very framework within which the trial proceeds, rather than simply the trial process itself.'" *Id.* at 42 (internal quotation marks and alteration omitted) (quoting Appellant's Br. 36). It did so by reference to the Supreme Court's holding that the Constitution does not guarantee a twelve-member jury.

Even if the court had adopted an alternative ground for its holding that harmless-error analysis applied, that still would not justify dismissing its holding about constitutional errors as dicta. "[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949); *see also Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 251 n.4 (2d Cir. 2021). "[E]ach is the judgment of the court, and of equal validity with the other." *Union Pac. R.R. Co. v. Mason City & Fort Dodge R.R. Co.*, 199 U.S. 160, 166 (1905). The *Johnson* court held that only the violation of a basic constitutional right may qualify as a structural error. But even if the court had separately held, without regard to constitutional concerns, that the lack of a twelve-person jury does not implicate fundamental fairness, both holdings would equally represent a binding holding of the court.

**B**

The separate concurrence makes a similar error. It claims that the holding of *Johnson* was "unnecessary" because "controlling precedent" established that a twelve-person jury is not a "substantial

6

right." *Ante* at 3. We observed in *Johnson* that we have previously held that the right to a twelve-member jury is not "substantial" for purposes of the Ex Post Facto Clause. *See Johnson*, 117 F.4th at 40 (quoting *United States v. Stratton*, 779 F.2d 820, 834 (2d Cir. 1985)). That prior precedent did not "control" the outcome in *Johnson*. Whether a right is "substantial" under the Ex Post Facto Clause does not dictate whether its violation qualifies as a structural error. In fact, we have never explained what it even means for a right to be considered "substantial" for ex post facto purposes. "[T]he meaning of 'substantial' in this context is not clear." *Stratton*, 779 F.2d at 833. The *only* reason we identified for concluding that the twelve-member jury does not qualify as a substantial right under the Ex Post Facto Clause is that it lacks *constitutional* status: "neither the Sixth nor Fourteenth Amendment guarantees a jury of twelve." *Id.* at 834.

In *Johnson*, we explained all of this. We said that the reason for our previous holding that the twelve-member jury is not a substantial right under the Ex Post Facto Clause is that the Constitution does not guarantee it:

> We therefore have held that the retroactive application of amended Rule 23(b), allowing conviction by eleven jurors, did not violate the Ex Post Facto Clause. "Whatever disadvantage to the defendant may occur from reducing the jury size from twelve to eleven is of insufficient proportion to give him a *constitutional right* to a jury of twelve, and it does not affect the substantial rights of the defendant for Ex Post Facto purposes."

*Johnson*, 117 F.4th at 40 (emphasis added) (alteration omitted) (quoting *Stratton*, 779 F.2d at 835). Thus, by citing this prior precedent, the *Johnson* court was not adopting an alternative holding. Rather, the court explained that (1) we have previously held the twelve-member

7

jury right not to be "substantial" because it is not constitutional, and (2) that approach supports our decision to hold that the right is not "structural" for the same reason. We said that "[t]hese prior precedents—holding that the right to a twelve-member jury is neither a constitutional nor even a substantial right—mean that a violation of Rule 23(b)'s twelve-member requirement cannot amount to a structural error" because "[w]e depart from [the generally applicable] harmless-error analysis only for a limited class of *fundamental constitutional errors* that defy analysis by 'harmless error' standards." *Id.* (internal quotation marks omitted).

Even if the prior decision in *Stratton* could have supported the result in *Johnson* for a reason other than the constitutional rationale on which *Johnson* relied, that would not diminish the precedential weight of *Johnson*'s holding. "Nor is it relevant for present purposes [that] these holdings might instead have been rested on other available grounds." *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 613 n.2 (1990). The reasoning of a panel opinion binds a later panel even if the later panel can imagine a narrower rationale for the earlier decision. "Even assuming [a prior] court was not required to decide the way it did, once it did so, its decision became binding precedent." *S&R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998).

"A court's stated and, on its view, necessary basis for deciding does not become dictum because a critic would have decided on another basis." Henry J. Friendly, *In Praise of Erie—and of the New Federal Common Law*, 39 N.Y.U. L. Rev. 383, 385-86 (1964). Indeed, the assertion that "the court's reasoning is not considered part of the holding" but that the "holding consists of nothing more than the facts of the case, together with the result," is "nothing more than a cynical, rhetorical device for overruling, or escaping, the precedent of a prior opinion without forthrightly acknowledging doing so." Leval, *supra*,

at 1256 n.20. *Johnson* held that non-constitutional errors are necessarily subject to harmless-error review. Even if other judges might have written the opinion differently, that conclusion was the "rationale upon which the [c]ourt based the results" it reached. *Seminole Tribe*, 517 U.S. at 66-67.

<h1 style="text-align:center">C</h1>

This order denying rehearing *en banc* features the spectacle of judges simultaneously concurring and dissenting in the same case with respect to the same result. Normally, a concurrence or a dissent provides reasons supporting or opposing the disposition of the court. Here, judges who disagree about the result focus on whether *Johnson*'s holding can be dismissed as dicta. But the opinions do not even agree on the reasoning for that specific point. The dissent insists that *Johnson* held only that the lack of a twelve-person jury does "not implicate the fundamental fairness of the trial procedure." *Post* at 6 n.1. That is wrong. *See supra* Part II.A. The concurrence insists that *Johnson* was dictated by prior precedent about the Ex Post Facto Clause. *See ante* at 3. That is also wrong, but for different reasons. *See supra* Part II.B.

Under any view of the holding-dicta distinction—but especially under the view that the separate opinions endorse—anything said here about the precedential status of *Johnson* is itself dicta. The court has decided not to exercise its discretion under Rule 40(c) to order an *en banc* rehearing of *Johnson*. To reach that result, it is not necessary to decide whether the holdings of *Johnson* may be dismissed as dicta in a future case. And certainly the views of those judges who voted in favor of *en banc* rehearing do not explain the decision of the court to deny it. Among the judges in the majority who voted to deny rehearing, four join this concurrence and three join the other concurrence in full or in part.

In any event, it was the decision of the *Johnson* panel that resolved the appeal in this case. "The active judges declined to revisit that decision *en banc*. The panel decision is therefore the [c]ourt's decision. Other judges may have views on the matter, but the case is not before them, and what they may say about it has as much force of law as if those views were published in a letter to the editor of their favorite local newspaper." *United States v. Stewart*, 597 F.3d 514, 519 (2d Cir. 2010) (Pooler, J., concurring in the denial of rehearing en banc) (emphasis added).

The decision of a panel of this court "is binding unless and until it is overruled by the [c]ourt *en banc* or by the Supreme Court." *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995). The conclusion of *Johnson* that structural errors must be constitutional errors was necessary to the judgment and therefore a holding of the court. It bears emphasizing that—contrary to the suggestions of the other opinions—this holding of *Johnson* reflects the majority view among the appellate courts.[1] Because the active judges of the Second Circuit have declined to reconsider that holding, it remains binding.

---

[1] *See United States v. Mojica-Baez*, 229 F.3d 292, 309 (1st Cir. 2000) ("Certain categories of error interfere with such basic and fundamental constitutional protections that they go to the structure of our criminal law system. … Other errors have been designated as structural in order to vindicate compelling constitutional policies."); *United States v. Nappi*, 243 F.3d 758, 770 (3d Cir. 2001) (rejecting a claim of structural error because "it is clear that the error that occurred here, without more, is not of constitutional dimension"); *United States v. Ross*, 72 F.4th 40, 47 (4th Cir. 2023) ("To qualify as structural, an error must not only implicate a defendant's constitutional rights but also affect the very framework in which a trial proceeds.") (internal quotation marks omitted); *In re Halprin*, 788 F. App'x 941, 944 (5th Cir. 2019) ("[S]tructural error is a type of constitutional error."); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 734 (10th Cir. 2005) ("[G]enerally speaking structural errors must, at a minimum, be constitutional errors.").

\*      \*      \*

In *Johnson*, this court held that (1) there is no constitutional right to a twelve-member jury, (2) a structural error must involve the denial of a constitutional right, and (3) the violation of Rule 23(b) must therefore be reviewed for harmlessness. Because those holdings are correct and should remain the law of the circuit, I concur in the denial of rehearing *en banc*.

---

*But see Green v. United States*, 262 F.3d 715, 718 (8th Cir. 2001); *McGriff v. Dep't of Corr.*, 338 F.3d 1231, 1235 (11th Cir. 2003); *United States v. Essex*, 734 F.2d 832, 845 (D.C. Cir. 1984). As *Johnson* noted, a split decision of the Fourth Circuit previously indicated support for the minority position, *see Johnson*, 117 F.4th at 41-42 (discussing *United States v. Curbelo*, 343 F.3d 273 (4th Cir. 2003)), but the Fourth Circuit has since adopted the majority view, *see Ross*, 72 F.4th at 47.

MERRIAM, *Circuit Judge*, joined by LEE, ROBINSON, PÉREZ, and NATHAN, *Circuit Judges*, dissenting from the denial of rehearing *en banc*:

Some trial errors can never be harmless. Some errors so infect the conduct of a trial, or the determination of a verdict, that they require a clean slate, and a new trial, to protect the defendant's essential rights. Such errors are *structural* – that is, they alter and undermine the very structure of a criminal trial.

This case presents the question of whether a violation of Federal Rule of Criminal Procedure 23(b) that reduces a criminal jury to eleven – before deliberations begin and over the objection of the defendant – constitutes a structural error that may not be considered harmless. The majority panel opinion "agree[d] with Johnson . . . that the district court violated Rule 23(b) when it proceeded with an eleven-member jury before deliberation without a stipulation from the parties." Majority Op. at 19. But the majority opinion concluded, over Judge Chin's dissent, that such an error is not structural, and went on to find the error harmless.

Judge Chin's dissent from the panel opinion thoroughly and persuasively articulates how the majority opinion gets the structural error analysis wrong. We believe that we should have convened *en banc* to find that the District Court's

error was not subject to harmless error review, and to remand for a new trial. And, particularly in light of dicta in the majority opinion suggesting that an error must implicate a constitutional right to be structural, we believe we should have taken this opportunity to state clearly that a trial error may be structural – and therefore not subject to harmless error review – even if it does not implicate a constitutional right. The District Court erroneously denied Johnson a jury of twelve. The right to a jury of twelve is firmly entrenched in our history, and the improper dismissal of even one juror impacts the outcome of a trial in systemic ways that cannot be accurately predicted in advance or assessed in retrospect. Such an error is structural, and that is a matter of exceptional importance that this Court should address. *See* Fed. R. App. P. 40(b)(2)(d). We therefore dissent from the denial of rehearing *en banc*.

\* \* \*

"[T]he defining feature of a structural error is that it affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself. For the same reason, a structural error defies analysis by harmless error standards." *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017) (citations and quotation marks omitted); *see also Greer v. United States*, 593 U.S. 503, 513 (2021).

2

The Supreme Court has identified three broad categories of errors that have been held to be structural: (1) errors that impact a right "not designed to protect the defendant from erroneous conviction but [that] instead protects some other interest," such as "the defendant's right to conduct his own defense"; (2) errors whose effects are "simply too hard to measure," such as "when a defendant is denied the right to select his or her own attorney"; and (3) errors that "always result[] in fundamental unfairness," such as a failure "to give a reasonable-doubt instruction." *Weaver*, 582 U.S. at 295-96. "These categories are not rigid." *Id.* at 296. And "one point is critical: An error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.*

The Supreme Court could easily have stated, in this discussion, that any such error must also be constitutional in nature. It did not. Indeed, neither the Supreme Court nor this Court has ever stated that only constitutional errors can be considered structural. To the contrary, Supreme Court precedent supports the proposition that whether a non-constitutional error can be structural is, at a minimum, an open question.

In *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), the defendants were convicted of criminal contempt for violating a permanent

injunction prohibiting infringement of a manufacturer's trademark. They challenged their convictions on the basis that the court-appointed special prosecutor conducting the criminal contempt prosecution was also the manufacturer's counsel. Although the Supreme Court upheld the district court's authority to appoint a special counsel to prosecute the case, it concluded that the attorney representing the private beneficiary of the injunction could not serve in that capacity. *See id.* at 801-02. A plurality of the Supreme Court found that harmless error review did not apply, citing *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986), for the proposition that "some errors are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case." *Id.* at 809-10 (citation and quotation marks omitted). It explained that "[a]n error is fundamental if it undermines confidence in the integrity of the criminal proceeding." *Id.* at 810. Comparing the error there with errors such as racial discrimination in grand jury selection, exposing a petit jury to publicity unfavorable to the defendant, or adjudication by a conflicted judicial officer, the plurality concluded: "A concern for actual prejudice in such circumstances misses the point, for what is at stake is the public perception of the integrity of our criminal justice system." *Id.* at 811. Significantly, the majority of

4

the Supreme Court did *not* identify the error as constitutional, instead grounding its holding in the supervisory authority of courts to enforce their own orders. *See id.* at 808-09. Thus, *Young* offers an example of an error that was not viewed as a *constitutional* error, but that a plurality of the Supreme Court nonetheless treated as a *structural* error that defies harmless error review.

Our own precedent, too, suggests that structural errors need not have constitutional dimensions. In *United States v. Li*, for example, we held that although "a defendant's right to a sentencing allocution is a matter of criminal procedure and not a constitutional right, it is nonetheless considered an 'absolute right' in the federal courts," such that "resentencing is typically appropriate if the sentencing court has not complied with the allocution requirement." 115 F.3d 125, 132-33 (2d Cir. 1997) (citations omitted). Likewise, we have observed that "[c]ategories of error found by the Supreme Court to be 'structural' *ordinarily* relate to 'certain basic, constitutional guarantees that should define the framework of any criminal trial.'" *Shabazz v. United States*, 923 F.3d 82, 84 (2d Cir. 2019) (quoting *Weaver*, 582 U.S. at 295) (emphasis added).

In spite of this background, and although no such rule is necessary to its holding, the majority opinion suggests that structural error *must* be anchored in

constitutional error.  *See* Majority Op. at 16 (citing a dissenting opinion of another Circuit for the proposition that "the Supreme Court and the appellate courts 'have repeatedly made clear that structural errors necessarily must affect a defendant's constitutional rights'" (quoting *United States v. Curbelo*, 343 F.3d 273, 289 (4th Cir. 2003) (Wilkins, *J.*, dissenting)))).[1]  As the opinion of Judge Lohier concurring in the denial of *en banc* review points out, the panel opinion's "statements bearing on a hypothetical structural error that is non-constitutional are clearly dicta."  Lohier, *J.*, Concurring Op. at 1.[2]  On this point, we agree with Judge Lohier's opinion: "[T]he question of whether a structural error must implicate a defendant's constitutional rights remains an open one in this Circuit."  *Id.* at 5.

---

[1]  The majority opinion rested its decision on its conclusion that the Rule 23(b) violation here, denying the defendant a jury of twelve, "did not implicate the fundamental fairness of the trial procedure" and therefore did not constitute structural error.  Majority Op. at 17.  As such, the discussion in the opinion of whether an error *must* be constitutional to be structural was unnecessary to the majority's decision and is therefore dicta.

[2]  Four active judges — including only one member of the original panel — have expressed the view that the statements are not dicta.  Eight active judges have expressed the view that they are.  Those views are based on each judge's individual reading of the original panel opinion.  None has any more weight than any other.

The majority panel opinion cites *Neder v. United States*, 527 U.S. 1 (1999), for the following proposition: "We depart from . . . harmless-error analysis only for 'a limited class of fundamental constitutional errors that defy analysis by "harmless error" standards.'"  Majority Op. at 14 (quoting 527 U.S. at 7).  But *Neder* does not, in fact, *limit* the scope or concept of structural error in the way the majority opinion suggests.

*Neder* observes that certain "fundamental constitutional errors" can affect substantial rights and defy harmless error review; it does not instruct that *only* such errors can do so: "[W]e have recognized a limited class of fundamental constitutional errors that defy analysis by 'harmless error' standards.  Errors of this type are so intrinsically harmful as to require automatic reversal (*i.e.*, 'affect substantial rights') without regard to their effect on the outcome."  527 U.S. at 7 (citations and quotation marks omitted).  The Supreme Court explained that such cases

> contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.  Such errors infect the entire trial process and necessarily render a trial fundamentally unfair.  Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair.

7

*Id.* at 8-9 (citations and quotation marks omitted).

Again, as was true in *Young*, the Supreme Court in *Neder* could have, but did not, expressly limit structural errors to those impacting a defendant's constitutional rights. It again declined to do so in *Weaver*. Rather, the Supreme Court's decisions direct us to inquire whether the district court's error affects a defendant's substantial rights, rendering the trial or the verdict fundamentally unfair, and undermining confidence in the process – not whether those rights are fundamentally constitutional in nature. *Cf.* Fed. R. Crim. P. 52(a) (allowing harmless error review where the error "does not affect *substantial rights*" (emphasis added)).

The right to a jury of twelve is properly viewed as a substantial right. This Court has never addressed the question of whether a Rule 23(b) violation affects substantial rights in cases – like Johnson's – where a twelfth juror was excused prior to deliberations and without the defendant's consent. Other Courts of Appeals have recognized that Rule 23(b) violations require reversal. As Judge Chin's dissent points out, some have expressly found the error to be structural. *See* Dissenting Op. at 13 (citing *Curbelo*, 343 F.3d at 285; *United States v. Taylor*, 498 F.2d 390 (6th Cir. 1974); *United States v. Essex*, 734 F.2d 832 (D.C. Cir. 1984)).

8

Others have remanded for new trials based on the Rule 23(b) error, without any express discussion of harmless or structural error. *See, e.g.*, *United States v. Tabacca*, 924 F.2d 906 (9th Cir. 1991) (remanding for a new trial because there was not good cause for dismissal of the twelfth juror); *United States v. Araujo*, 62 F.3d 930 (7th Cir. 1995) (same). The majority opinion conflicts with these decisions of our sister circuits, which both undermines its persuasiveness and further supports the rationale for rehearing this matter *en banc*. *See* Fed. R. App. P. 40(b)(2)(c).

The majority opinion also departs from the holdings of this and the other Courts of Appeals in declaring that "[o]ne additional juror participating in the deliberation would not have affected the outcome on the counts that resulted in conviction." Majority Op. at 21. There is no factual basis for that statement; it represents nothing more than "appellate speculation about a hypothetical [twelve-member] jury's action." *Sullivan v. Louisiana*, 508 U.S. 275, 280 (1993).[3]

_____

[3] In fact, it is evident from the record that in this case, one juror very well might have changed things, because the jury appears to have had difficulty reaching a verdict. Over the course of its deliberations, the jury submitted multiple notes to the District Court, including one that read: "At this time we have not reached a conclusion on one of the counts. We do not believe we will reach a consensus. How do we proceed[?]" App'x at 540. It deliberated for more than two days, after hearing only one day of evidence, including continued deliberations after receiving guidance from the District Court. It may even be that the verdict was a

9

We simply cannot know how that one juror might have changed the outcome, because we do not know what is in the jurors' minds; we do not know the dynamics of their deliberations. "As a general rule, no one – including the judge presiding at a trial – has a 'right to know' how a jury, or any individual juror, has deliberated or how a decision was reached by a jury or juror." *United States v. Thomas*, 116 F.3d 606, 618 (2d Cir. 1997). As Judge Chin's dissenting opinion observes: "Because an appellate court cannot know what effect a twelfth juror might have had on jury deliberations, making such a determination would be based, inherently, on pure speculation." Dissenting Op. at 10; *accord Curbelo*, 343 F.3d at 281. The addition or removal of even a single juror might increase the chances of conviction – or of acquittal – and quite obviously increases the chances of a lone holdout resulting in a mistrial.[4]

---

compromise arrived at by a hopelessly hung jury. We simply have no idea; that is why the concept of harmless error is so misplaced in this context.

[4] As fictionally depicted in the film *12 Angry Men* nearly 70 years ago, the effect one juror can have on the deliberation process remains a cultural touchstone. *See*, *e.g.*, Jason D. Reichelt, *Standing Alone: Conformity, Coercion, and the Protection of the Holdout Juror*, 40 U. Mich. J.L. Reform 569, 622 (2007) ("[A] lone dissenter who has an honest disagreement with the rest of the jury regarding the existence or absence of reasonable doubt deserves as much respect and deference as any member of the overwhelming majority.").

Rule 23(b) recognizes the significant impact that each individual juror has on the process and thus limits the circumstances in which a jury of fewer than twelve persons may return a verdict.  Rule 23(b) is not just a procedural rule; it safeguards the fundamental right to trial by a properly constituted jury.[5]  "[T]rial by jury in criminal cases is fundamental to the American scheme of justice," reflecting "a profound judgment about the way in which law should be enforced and justice administered."  *Duncan v. Louisiana*, 391 U.S. 145, 149, 155 (1968).  And "trial by jury" at common law has always meant trial by a jury of twelve.[6]

---

[5]  Significantly, other errors that undermine the integrity of a jury trial are considered structural errors not subject to harmless error review.  *See, e.g.*, *Galarza v. Keane*, 252 F.3d 630, 638 n.8 (2d Cir. 2001) ("[A] *Batson* error is a structural error that is not subject to harmless error review." (citations and quotation marks omitted)).

[6]  Numerous sources – including several that have been relied upon by the Supreme Court in other contexts – confirm the historical expectation of and right to a twelve-person jury.  *See, e.g.*, 1 Joseph Chitty, *Criminal Law* 411 (Am. ed. 1819) ("The petit jury, when sworn, must consist precisely of twelve, and is never to be either more or less on the trial of the general issue . . . .  If, therefore, the number returned be *less than twelve*, any verdict must be ineffectual, and the judgment will be reversed for error." (emphasis added)); 2 W. Russell & C. Greaves, *Crimes and Misdemeanors* 675 (5th Am. ed. 1845) (noting that a charge of conspiracy "against the public justice of the kingdom" to "indict an innocent person falsely and maliciously of felony" [akin to modern-day malicious prosecution] may lie where a person is indicted on a charge, but "afterwards the party is lawfully acquitted by the verdict of *twelve men*" (emphases altered)); 2 Matthew Hale, *The History of the Pleas of the Crown* 295 (1st Am. ed. 1847) ("If after the jury sworn . . . *eleven cannot give any verdict without the twelfth* . . . and

11

For all of these reasons, and for the reasons persuasively articulated in Judge Chin's dissenting opinion, we believe "we must follow our sister circuits and conclude that the court's decision to excuse the twelfth juror prior to deliberations and absent the defendant's consent falls into the special category of errors that 'defy analysis by harmless-error standards' and require automatic reversal because they are 'necessarily unquantifiable and indeterminate.'" *Curbelo*, 343 F.3d at 285 (quoting *Sullivan*, 508 U.S. at 281-82).

The range of errors that can be considered structural, and thus not subject to harmless-error review, has not been clearly delineated by the Supreme Court. But there is no sound basis for concluding that only constitutional errors may be considered structural. Rehearing this matter *en banc* would provide us with an opportunity to clarify that even if not a *constitutional* right, the long-established right to a jury of twelve is nonetheless a *substantial* right, the violation of which impacts the fairness and integrity of the entire trial. The violation of such a right should not be subject to harmless error review. We therefore respectfully dissent from the denial of rehearing *en banc*.

_____

that jury may be discharged, and a new jury sworn, and new evidence given, and the verdict taken of the new jury . . . ." (emphasis added)).

CHIN, *Senior Circuit Judge*, statement of views with respect to the denial of rehearing *en banc*:[1]

In my view, for the reasons set forth in Judge Merriam's dissent from the denial of rehearing *en banc* and in my dissent from the panel decision, *see United States v. Johnson*, 117 F.4th 28, 53 (2d Cir. 2024), the Court should have voted to rehear this case *en banc*.  Defendant-appellant Rickey Johnson's convictions should be set aside because he was found guilty by a jury of fewer than twelve persons, in clear violation of his rights.  I write only to emphasize a few points.

First, the panel majority concluded that "the Supreme Court has said that there is no constitutional right to a twelve-member jury." *Id.* at 40 (discussing *Williams v. Florida*, 399 U.S. 78, 102 (1970)).  But *Williams* involved state criminal proceedings and a Florida statute that permitted six-person juries in non-capital cases.  *See* 399 U.S. at 86 ("We hold that the 12-man panel is not a necessary ingredient of 'trial by jury,' and that [the State]'s refusal to impanel more than the six members provided for by Florida law did not violate

---

[1]     As a senior judge, I have no vote on whether to rehear a case *en banc*.  *See* Fed. R. Civ. P. 35(a).  As a member of the original panel in this case, however, pursuant to the Court's *en banc* protocols, I may file a statement of views in the circumstances here, where an active judge has filed a dissent from an order of the Court denying or granting rehearing *en banc*.

petitioner's Sixth Amendment rights as applied to the State through the Fourteenth [Amendment]."). The Supreme Court's holding that a defendant does not have a Sixth Amendment right to a twelve-person jury in *those* circumstances does not preclude the conclusion that a defendant has a constitutional right to a twelve-person jury in *federal* criminal proceedings, and this is very much an open question. *See United States v. Curbelo*, 343 F.3d 273, 279 n.5 (4th Cir. 2003) (noting that "the Supreme Court has never *held* that the Sixth Amendment does *not* require a twelve-person jury in *federal* prosecutions." (third emphasis added)); 2 Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure § 373 (4th ed. 2009) ("Rule 23(b)(1) continues to require a jury of 12, and it may well be that in federal court a jury of that size is still constitutionally compelled." (footnotes omitted)). In light of the constitutional protections given to the right of trial by jury generally,[2] the importance of a twelve-person jury in our history,[3]

---

[2]    *See* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .").

[3]    "[T]he general infrastructure of the criminal jury as a twelve-member body rendering unanimous verdicts was clearly established by" the late 14th century in England. Robert H. Miller, Comment, *Six of One is Not a Dozen of the Other: A Reexamination of* Williams v. Florida *and the Size of State Criminal Juries*, 146 U. Pa. L. Rev. 621, 638-39 (1998); *see also Ramos v. Louisiana*, 590 U.S. 83, 90 (2020) (noting that one late 14th century English decision stated that a "'verdict, taken from eleven, was no verdict'

and the clear terms of Rule 23(b) of the Federal Rules of Criminal Procedure,[4]

there is, I believe, a constitutional right to a twelve-person jury in *federal* criminal

proceedings. Accordingly, even assuming structural error requires constitutional

error, Rickey Johnson's constitutional right to a twelve-person jury was violated

here.

Second, as Judge Merriam persuasively argues and as set forth in

my dissent from the panel decision, the law does not limit structural errors to

---

at all" (quoting James Bradley Thayer, A Preliminary Treatise On Evidence At The Common Law 88-89 n.4 (1898)). In 1769, Blackstone reiterated the common-law rule -- no person could be found guilty of a serious crime unless "the truth of every accusation . . . should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbours, indifferently chosen." William Blackstone, 4 Commentaries on the Laws of England 349 (Thomas Cooley ed., 1871). This same common-law rule applied in the young American colonies, *see, e.g.*, *IV. Unshrinking the Federal Civil Jury*, 110 Harv. L. Rev. 1466, 1468 (1997) ("In the American colonies, the Charter of Jamestown established the twelve-person jury in 1607."), and well after the Sixth Amendment's adoption, *see, e.g.*, Joseph Story, 2 Commentaries on the Constitution of the United States 588 (1858) ("And a trial by jury is generally understood to mean, *ex vi termini*, a trial by a jury of *twelve* men, impartially selected, who must *unanimously* concur in the guilt of the accused before a legal conviction can be had. Any law therefore, dispensing with any of these requisites, may be considered unconstitutional."); *Foote v. Lawrence*, 1 Stew. 483, 483 (Ala. 1828) ("The term *jury* is well understood to be twelve men . . . ."); *Work v. State*, 2 Ohio St. 296, 304 (1853) ("The number must be twelve . . . .").

[4]     Rule 23(b)(1) provides that "[a] jury consists of 12 persons unless this rule provides otherwise." Rule 23(b)(2)(A) provides that the parties may stipulate in writing, with the court's approval, to a jury of "fewer than 12 persons." Rule 23(b)(3) provides, however, that "[a]fter the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror."

those of a constitutional dimension. Even if the right to a twelve-person jury in federal criminal cases is not a constitutional right, it surely is a "substantial right." *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does *not* affect *substantial* rights must be disregarded." (emphases added)). Structural errors "infect the entire trial process," *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993)), and harmless error review is inappropriate where "the effects of the error are simply too hard to measure," *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017). The "defining feature of a structural error," *id.*, is that it "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself," *Neder*, 527 U.S. at 8. The error here infected the framework of the trial itself, and its effects are indeed too hard to measure because we cannot, on appeal, know with any degree of certainty what impact a twelfth juror would have had in this exceedingly close case, where the eleven-person jury clearly labored to reach a unanimous verdict. An additional juror could have tipped the balance or caused a hung jury and a mistrial. The district court's error in denying Johnson a twelve-person jury is, in my view, structural, and therefore harmless error analysis does not apply.

Third, even if the error is not deemed structural and harmless error analysis does apply, the government failed to meet its burden of demonstrating that the error was harmless. Where a defendant timely objects to an error and Rule 52(a) applies, the government bears the burden of showing that the defendant was not prejudiced by the error. *See United States v. Olano*, 507 U.S. 725, 734-35 (1993). The government has not met its burden here. This was indeed a close case, as the jury deliberated for more than two days to render a split verdict, sending out notes showing that it was struggling (including inquiring about the impact of mental illness in a case where the defendant engaged in manifestly erratic behavior), when the presentation of evidence took only the equivalent of one day. These are all indications that the jury had great difficulty reaching a verdict; a twelfth juror could very well have tipped the balance or brought about a deadlock. *See generally* 117 F.4th at 61-63.[5] The panel's decision is also problematic because it injects a prejudice requirement

---

[5] In determining whether the government has met its burden, "we ask whether we can conclude with fair assurance that the errors did not substantially influence the jury." *United States v. Gupta*, 747 F.3d 111, 133 (2d Cir. 2014) (citation and quotation marks omitted). "The inquiry cannot be merely whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

into Rule 23(b) when no such requirement exists, and it would effectively permit a trial court to proceed with an eleven-person jury whenever it believed there was good cause to excuse a juror and the evidence of guilt was strong.

Finally, in these *en banc* polls where members of the Court debate whether "questions of exceptional importance" are presented, Fed. R. App. P. 40(b)(2)(D), we must not lose sight of the impact our rulings have on the individuals involved. Even if it is not likely that the error that occurred in this case will recur with any frequency, Johnson still bears the burden of the collateral consequences that come with three felony convictions.

In short, the Court should have granted rehearing *en banc*, the judgment of the district court should be vacated, and the case should be remanded for a new trial – before a jury of twelve.